## ILLINOIS PACKING CO. v. DEFENSE SUP-PLIES CORPORATION.

### Civ. No. 44 C 865.

District Court, N. D. Illinois, E. D.

Sept. 29, 1944.

Walker and Atwood, of Chicago, Ill., for plaintiff.

Lee Walker, M. O. Hoel, and Stephen R. Chummers, all of Chicago, Ill., for defendant.

LA BUY, District Judge.

On October 25, 1943, Fred M. Vinson, Director of the Office of Economic Stabilization, issued a Directive, pursuant to authority conferred on him by the Act of October 2, 1942, passed by the Congress of the United States, which Act is entitled "An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation, and for other purposes," 50 U.S.C.A.Appendix, §§ 961–971, and also pursuant to authority of Executive Order No. 9250 of October 3, 1942, 50 U.S.C.A.Appendix, § 901 note, and to Executive Order No. 9328 of April 8, 1943, 50 U.S.C.A.Appendix, § 901 note. The portion of said Directive insofar as same is material herein is as follows:

"5. Slaughterers who during the year 1942, or a representative portion thereof, sold and who currently sell 98% or more of the total dressed carcass weight of cattle slaughtered by them in the form of carcasses, wholesale cuts, frozen boneless beef (Army specifications) (carcass equivalent) or ground beef, shall be paid in addition to

the payments authorized by Regulation No. 3 of Defense Supplies Corporation (Livestock Slaughter Payments), the amount of $0.80 per cwt. of cattle slaughtered during the month for which such payments are made."

"6. Defense Supplies Corporation is directed to amend Regulation No. 3 (Livestock Slaughter Payments) in accordance with this Directive."

Pursuant to said Directive the defendant issued on October 30, 1943, Amendment No. 2 to its Regulation No. 3, which amendment provided for extra compensation for slaughterers of beef. The material portion of said Amendment No. 2 is as follows:

"(1) 'Non-processing slaughterer of beef' means an unaffiliated slaughterer as hereinafter defined who during six consecutive months of 1942, sold, and who currently sells, 98% or more, measured in dressed carcass weight, of the total beef produced from cattle slaughtered by him in all his establishments, in the form of carcasses, wholesale cuts, boneless beef or ground beef.

"(2) 'Unaffiliated slaughterer' means a slaughterer who does not own or control a processor or purveyor of meat, and who is not owned or controlled by a processor or purveyor of meat. 'Unaffiliated slaughterer' shall not include any institution, representative or agency of Federal, State or local governments.

"(3) 'Processor or purveyor of meat' means a person who processes fresh beef or sells or dispenses fresh or processed meat or products containing meat, at wholesale or at retail, or in a hotel, restaurant or other eating establishment.

"(4) 'Own or control' means to own or control directly or indirectly a partnership equity or in excess of ten per cent of any class of outstanding stock or to have made loans or advances in excess of five per cent of the other person's monthly sales."

Upon the issuance of said Directive and said Amendment No. 2, the plaintiff filed claims with the defendant for the payment of extra compensation on account of cattle slaughtered on and after November 1, 1943, up to and including April 30, 1944, and the defendant paid to plaintiff on account of said claims so filed the sum of $308,520.08 for extra compensation for said period of time. Subsequently plaintiff filed a claim for basic and extra compensation for the month of May, 1944. The basic compensa-

tion was paid by defendant, but the defendant did not pay the claim of the plaintiff for extra compensation for said month of May in the amount of $51,785.84. The plaintiff also filed claims with the defendant for basic and extra compensation for the month of June, 1944. The basic compensation in the sum of $47,932.54 and the extra compensation in the sum of $46,405.88 have been allowed by the defendant, but not paid to the plaintiff.

The defendant on May 20, 1944, notified the plaintiff that it considered the plaintiff had obtained payment of the extra compensation in the sum of $308,520.08 without right or justification because at the time that said payment of extra compensation was made over 10% of the outstanding capital stock of the plaintiff was owned or controlled, directly or indirectly, by Pfaelzer Brothers, a processor or purveyor of meat. The defendant thereupon notified the plaintiff that it would withhold all future payments of compensation, both basic and extra, which might be payable to the plaintiff under the Directive of the Administration of the Office of Economic Stabilization or under Regulation No. 3, and any amendments thereof which might accrue after May 29, 1944 (the date of the transfer of said stock previously held by said Pfaelzer Brothers to one Fred B. Salmon who was not and is not a processor or purveyor of meat), until such time as all extra compensation received by the plaintiff during the said period of November 1, 1943 to April 30, 1944, in the amount of $308,520.08 had been paid by set-off out of compensation (either basic or extra) which would become due to the plaintiff in the future. Pursuant to said notice the defendant has not made any further payments of either basic or extra compensation to the plaintiff.

Plaintiff seeks a declaratory judgment finding that the portion of said Amendment No. 2 which provides that " 'own or control' means to own or control directly or indirectly a partnership equity or in excess of ten per cent of any class of outstanding stock or to have made loans or advances in excess of five per cent of the other person's monthly sales" is invalid, and as a matter of law is null and void. The complaint in its various counts sets up several reasons for the claimed invalidity of said portion of said Amendment No. 2, some of which reasons are as follows: (a) It provides in substance that in order to be disqualified for the receipt of extra compensation, the

plaintiff was required to both own or control a processor or purveyor of meat, and be owned or controlled by a processor or purveyor of meat, and that plaintiff did not own or control a processor or purveyor of meat and was not owned or controlled by a processor or purveyor of meat at any time between November 1, 1943, up to May 29, 1944; (b) that said Amendment sets up a conclusive presumption of fact, without basis or relation to actual facts and contrary to the actual facts, and denies the plaintiff the right to rebut the said presumption, contrary to the rights of the plaintiff under the Fifth Amendment to the Constitution of the United States; (c) that said regulation is contrary to the provisions of Executive Order No. 9250 of the President of the United States in that under said Executive Order No. 9250 and under the Directive of the Office of Economic Stabilization, the defendant had no power to promulgate rules and definitions which were beyond the scope of the authority thereof in that same is an attempt by the defendant to limit and define the class of persons who are entitled to payment of extra compensation under the said Directive of the Office of Economic Stabilization, and as such, beyond the scope of the authority of the defendant; (d) that in the definition of "own or control" in said Amendment, there is no rational connection between the declared policy of the Directive of October 25, 1943, and the said regulation; (e) that said definition is an arbitrary limitation of the class of persons who were entitled to compensation under the provisions of paragraph 5 of the said Directive, and as such, in excess of the power of the defendant to promulgate, and contrary to the provisions of Executive Order No. 9250 of the President of the United States and the provisions of the Directive of October 25, 1943.

The defendant has filed its written motion to strike the complaint on the ground that the court has no jurisdiction of the subject matter of this suit, because the exclusive jurisdiction of the question involved is vested in the Emergency Court of Appeals.

Under Executive Order No. 9250 the Office of Economic Stabilization was established and the Administrator of this office, the Economic Stabilization Director, was authorized with the approval of the President to formulate and put into effect an economic policy relating to prices, rationing, subsidies and other matters relating to the control of civilian purchasing power. The Director was given the power to issue directives on policy to the federal departments or agency concerned; the power to direct any Federal department or agency including, but not limited to the Department of Agriculture (including the Commodity Credit Corporation and the Surplus Marketing Administration), the Department of Commerce, the Reconstruction Finance Corporation, and other corporations organized pursuant to Section 5d of the Reconstruction Finance Corporation Act, as amended, 15 U.S.C.A. § 606b, to use its authority to subsidize and to purchase for resale, if such measures are necessary to insure the maximum necessary production and distribution of any commodity, or to maintain ceiling prices or to prevent a price rise inconsistent with the purpose of the Order. The administration of activities related to the national economic policy was to remain with the departments and agencies responsible for such activities, but such administration should conform to the directives or policy issued by the Director.

It was under the power granted in the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., the said Executive Order No. 9250 and Executive Order No. 9328 of April 8, 1943, that the Directives with reference to payment of $0.80 per cwt. of cattle slaughtered during a certain month in addition to the payments previously authorized by Regulation No. 3 of Defense Supplies Corporation (Livestock Slaughter Payments) was made. Plaintiff contends that subsidy payments were not paid to it under Sec. 2(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 902(e), but that subsidy payments were made to it under the Stabilization Act of 1942. Congress has given recognition of the fact that the grant of subsidy powers to Section 5d corporations was under Section 2(e), in that said Section 2(e) was amended to provide that no subsidy payments should be made after June 30, 1945, by the Price Administrator, Reconstruction Finance Corporation or any other Government corporations unless appropriation should be made therefor by Congress. In the construction of any Act the intention of the lawmaking body is to be determined and when that intention is made clear that intention or construction is binding on the court. The court holds that payment of the subsidies to the plaintiff by the defendant was an exercise of the power conferred

under the provisions of Section 2(e) of the Emergency Price Control Act.

Section 204(d) of the Emergency Price Control Act of 1942 provides that the Emergency Court of Appeals and the Supreme Court of the United States, on certiorari, have exclusive jurisdiction to determine the validity of any regulation or order issued under Section 2 of said Act, or of any provision of such regulation. In the case of Rottenberg v. United States, 1 Cir., 137 F.2d 850, page 855, the court said: "This argument overlooks the breadth of the language in § 204(d). The subsection provides, affirmatively, that the Emergency Court of Appeals, and the Supreme Court on certiorari therefrom, 'shall have exclusive jurisdiction to determine the validity of any regulation.' * * * Since this is a blanket provision it is natural that it is placed in a section which prescribed the only procedure by which the validity of a regulation may be subjected to court review."

An examination of the grounds assigned by the plaintiff for the contention that the regulation set up in Section 14 with reference to "own or control" is null, void and invalid, shows that all of the grounds so assigned attack the validity of said regulation. Under the plain language of Section 204(d) this court has no jurisdiction to pass upon the validity of such regulation unless that power is conferred upon the court by Subsection (m) of the amendment of Section 2 of the Emergency Price Control Act of 1942, which provides as follows:

"(m) No agency, department, officer, or employee of the Government in the payment of sums authorized by this or other Acts of Congress relating to the production or sale of agricultural commodities, or in contracts for the purchase of any such commodities by the Government or any department or agency thereof, or in any allocation of materials or facilities, or in fixing quotas for the production or sale of any such commodities, shall impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful regulations issued thereunder, under which such sums are authorized, such contracts are made, materials and facilities allocated, or quotas for the production or sale of any such commodities are imposed. Any person aggrieved by any action of any agency, department, officer, or employee of the Government contrary to the provisions hereof, or by the failure to act of any such agency, department, officer, or employee, may petition the district court of the district in which he resides or has his place of business for an order or a declaratory judgment to determine whether any such action or failure to act is in conformity with the provisions hereof and otherwise lawful; and the court shall have jurisdiction to grant appropriate relief. The provisions of the Judicial Code as to monetary amount involved necessary to give jurisdiction to a district court shall not be applicable in any such case."

■ The court has considered the language of this sub-paragraph and is of the opinion that it does not confer jurisdiction upon this court to pass upon the validity of the regulation in question. The court is impelled to the above conclusion for the following reasons:

(a) Said subparagraph (m) does not purport to be an amendment to Section 204(d) with reference to the exclusive jurisdiction of the Emergency Court of Appeals with reference to passing upon the validity of a regulation.

(b) The words "conditions or penalties" in the portion of the subparagraph which states "impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful regulations issued thereunder, under which such sums are authorized" does not refer to "regulations" because the word "regulations" is used latterly in said sentence, thus distinguishing "conditions or penalties" from "regulations."

(c) Said subparagraph (m) apparently confers jurisdiction upon the district court in cases where some act of the agency, within the Act and the regulations promulgated with reference thereto, is contrary to the provisions of the Act or the lawful regulations issued thereunder. And this construction is borne out by the further language which grants unto the district court jurisdiction to enter "an order or a declaratory judgment to determine whether any such action or failure to act is in conformity with the provisions hereof and otherwise lawful."

(d) It was apparently the intention of Congress to provide a remedy in the district court to persons entitled to subsidies through the production or sale of agricultural commodities when the agency in

question should make a determination under the Act or Acts and the pertinent Regulation which was incorrect in point of fact. Such cases would arise if the agency should determine that a slaughterer was ineligible because of the ownership of 10% of the stock of a corporation by a purveyor when in fact a purveyor did not own 10% of such stock; such cases would arise if the agency should determine that a slaughterer was not entitled to compensation for some reason not set up in the Act or the regulations; and such cases might arise under a variety of other circumstances. In all of such cases the district court has jurisdiction under subparagraph (m), and the manifest purpose of such subparagraph is to confer jurisdiction in such cases and not to confer jurisdiction upon the district court in cases involving the validity of a regulation, jurisdiction of which was vested exclusively in the Emergency Court of Appeals.

(e) To hold that said subparagraph (m) conferred jurisdiction upon the district court to pass upon the validity of regulations would raise the very question of lack of uniformity of construction by the various district courts, which was sought to be avoided by the creation of the Emergency Court of Appeals. If said subparagraph (m) should be held to confer jurisdiction on the district court to pass upon the validity of a regulation, then there might be decisions of the different district courts which were not uniform, leading to confusion and inability to properly administer the Act. If the construction adopted by the court is correct, then subparagraph (m) only applies to particular cases of application of the regulations. These cases would all be decided upon the facts of each particular case, and there would be no lack of uniformity, as no decision would be a precedent in any other case and would only apply to the particular facts in question.

(f) In the amendment to section 204 of the Emergency Price Control Act of 1942, it is provided as follows:

"(e) (1) Within thirty days after arraignment, or such additional time as the court may allow for good cause shown, in any criminal proceeding, and within five days after judgment in any civil or criminal proceeding, brought pursuant to section 205 involving alleged violation of any provision of any regulation or order issued under section 2 or of any price schedule effective in accordance with the provisions of section 206, the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated. The court in which the proceeding is pending shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203(a). Upon the filing of a complaint pursuant to and within thirty days from the granting of such leave, the Emergency Court of Appeals shall have jurisdiction to enjoin or set aside in whole or in part the provision of the regulation, order, or price schedule complained of or to dismiss the complaint. * * * "

If it had been the intention of Congress to provide the District Courts with jurisdiction to pass on the validity of any regulation, such power would have been stated in section 204(e). Section 204(e) is an extension of the right to test the validity of a regulation, and is a reaffirmation of the exclusive jurisdiction of the Emergency Court of Appeals to test the validity of a regulation, order or price schedule.

█ The court is, therefore, of the opinion that this court has no jurisdiction to pass upon the validity of Section 14 of said regulations, and that, therefore, the complaint should be dismissed for want of jurisdiction.