147 F.2d 554 (1945)
ILLINOIS PACKING CO.
v.
BOWLES, Price Administrator.
No. 185.
United States Emergency Court of Appeals.
Submitted December 23, 1944.
Decided February 13, 1945.
*555 Irwin N. Walker and Peter B. Atwood, both of Chicago, Ill., for complainant.
Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Jacob D. Hyman, Chief, Court Review Price Branch, and Carl H. Fulda, Attorney, and Irene Kolin Lichtman, Atty., all of the Office of Price Administration, all of Washington, D. C., for respondent.
Before MARIS, Chief Judge, and MAGRUDER, LINDLEY, and LAWS, Judges.
MAGRUDER, Judge.
In this complaint, Illinois Packing Company claims to be aggrieved by an order of the Price Administrator dismissing its protest challenging the validity of certain provisions of Amendment No. 2, 9 F.R. 1820, to Regulation No. 3, 8 F. 10826, of the Defense Supplies Corporation, a wholly owned subsidiary of the Reconstruction Finance Corporation, 6 F.R. 2972. A special subsidy of 80 cents per cwt. to non-processing slaughterers of cattle was established pursuant to a directive of the Office of Economic Stabilization issued October 25, 1943, 8 F.R. 14641. The provisions of Amendment No. 2 to which complainant takes exception prescribe various conditions upon the payment of the subsidy in question. To be eligible for the subsidy, a non-processing slaughterer, as defined, must be an "unaffiliated slaughterer"; that is, it must not "own or control" or be "owned or controlled by" a processor of meat, and the phrase "own or control" is defined as meaning "to own or control directly or indirectly a partnership equity or in excess of ten per cent of any class of outstanding stock. * * *" It is alleged that the Defense Supplies Corporation held that complainant was not eligible to receive the special subsidy upon the ground that more than ten per cent of its outstanding capital stock was owned or controlled by a processor of meat, to wit, Pfaelzer Brothers of Chicago, Illinois.
To test the validity of these provisions of Amendment No. 2, Illinois Packing Company brought a declaratory judgment suit against the Defense Supplies Corporation in the United States District Court for the Northern District of Illinois, on the theory that that court had jurisdiction to determine the validity of the amendment under § 2(m) of the Emergency Price Control Act, as amended by the Stabilization Extension Act of 1944, 58 Stat. 632, 50 U.S.C.A.Appendix, § 902(m). The District Court dismissed the complaint, holding that Amendment No. 2 had been issued under § 2 of the Emergency Price Control Act and that under § 204(d) of that Act, 50 U.S.C.A.Appendix § 924(d), the Emergency Court of Appeals had exclusive jurisdiction to pass upon its validity. Illinois Packing Co. v. Defense Supplies Corp., D.C., 1944, 57 F.Supp. 8.
Thereafter, on October 12, 1944, the Illinois Packing Company, purporting to act pursuant to the provisions of § 203(a) of the Emergency Price Control Act, 50 U. S.C.A.Appendix, § 923(a), filed with the Office of Price Administration a protest against the provisions of Amendment No. 2 in question. The prayer of the protest was "that the Office of Price Administration enter an order in this protest specifically holding that said Amendment No. 2 to Regulation No. 3 of Defense Supplies Corporation is invalid and contrary to the Subsidy Order issued by Fred M. Vinson as Director of the Office of Economic Stabilization on October 25, 1943, * * *."
The Price Administrator on November 9, 1944, issued an order dismissing the protest. In an accompanying opinion, the Administrator stated:
"Section 2(e) also authorizes the Administrator to buy or sell commodities or to make subsidy payments to domestic producers of such commodities upon such terms and conditions as he determines to be necessary to obtain the maximum necessary production. It is expressly provided, however, that with regard to commodities defined as strategic or critical pursuant to Section 5d of the Reconstruction Finance Corporation Act subsidy payments may be made only by corporations created under that Section. Since meat *556 has been defined as a strategic and critical material, the Administrator has no authority to make subsidy payments to slaughterers of meat or to determine the conditions of such payments. Therefore even if a subsidy regulation issued by the Administrator under Section 2(e) should be protestable, it is clear that the protest and judicial review provisions of the Emergency Price Control Act, as amended, are not applicable in this case. The present protest is directed exclusively against a regulation issued by Defense Supplies Corporation. The prayer for relief asks the Price Administrator to hold invalid a regulation issued by another government agency. Obviously even if the Administrator should wish to grant the protest he would have no power to do so since nothing in the Emergency Price Control Act authorizes him to modify or set aside any regulation issued by other government agencies. It seems clear, therefore, that the present protest must be dismissed for lack of jurisdiction."
Following the dismissal of its protest, Illinois Packing Company filed the present complaint in this court, asserting that we have jurisdiction under § 204(a) and (c) of the Emergency Price Control Act, 56 Stat. 23.
The Price Administrator, as respondent, has filed a motion to dismiss the complaint for the reason that this court lacks jurisdiction to entertain it.
Our jurisdiction under § 204(a) is limited to entertaining a complaint by any person "who is aggrieved by the denial or partial denial of his protest". The "protest" referred to carries back to § 203(a), which provides that, "after the issuance of any regulation or order under section 2", any person subject thereto may, in accordance with regulations to be prescribed by the Administrator, file a protest specifically setting forth his objections to the regulation or order. The subsection then goes on to describe the action which the Price Administrator is to take in disposing of the protest. Thus it is clear that our jurisdiction under § 204(a) to set aside regulations or orders is limited to regulations or orders issued under § 2 of the Act, and then only after a protest duly filed under § 203 (a) has been denied in whole or in part. Safeway Stores, Inc. v. Brown, Em.App., 1943, 138 F.2d 278, certiorari denied 1943, 320 U.S. 797, 64 S.Ct. 266.
Curiously enough, the complainant joins with respondent in asserting our lack of jurisdiction to entertain the present complaint, though for different reasons. Complainant asks us to place our denial of jurisdiction upon the ground that Amendment No. 2 is not a regulation or order issued under § 2 of the Act but, on the contrary, is issued pursuant to the general authority vested in the President by §§ 1 and 2 of the Act of October 2, 1942, 56 Stat. 765, 50 U.S.C.A.Appendix, §§ 961, 962, now cited as the Stabilization Act of 1942, and by the President delegated to the Office of Economic Stabilization by Executive Order 9250, Oct. 3, 1942, 50 U.S.C.A.Appendix § 901 note, 7 F.R. 7871. What the complainant hopes to gain from such a ruling, apparently, is to clear the path for its pending appeal in the case of Illinois Packing Co. v. Defense Supplies Corporation, D.C., 1944, 57 F.Supp. 8, referred to above; that is, if we lack jurisdiction to pass upon the validity of provisions of Amendment No. 2 prescribing conditions upon the payment of subsidies, the District Court was in error in dismissing the complaint in that case on the ground that the subject matter was within the exclusive jurisdiction of the Emergency Court of Appeals.
The Act of October 2, 1942, contains no express provision authorizing the President to establish a subsidy program, and we have been referred to nothing in the legislative history indicating that Congress intended in the general language of that Act, to confer any subsidy powers. Such grant of power was indeed unnecessary, for § 2(e) of the Emergency Price Control Act, to which the Act of October 2, 1942, was complementary, had already conferred authority to make subsidy payments, in the following terms:
"Whenever the Administrator determines that the maximum necessary production of any commodity is not being obtained or may not be obtained during the ensuing year, he may, or behalf of the United States, without regard to the provisions of law requiring competitive bidding, buy or sell at public or private sale, or store or use, such commodity in such quantities and in such manner and upon such terms and conditions as he determines to be necessary to obtain the maximum necessary production thereof or otherwise to supply the demand therefor, or make subsidy payments to domestic producers of such commodity in such amounts and in such manner and upon such terms and conditions as he determines to be necessary to *557 obtain the maximum necessary production thereof: Provided, That in the case of any commodity which has heretofore or may hereafter be defined as a strategic or critical material by the President pursuant to section 5d of the Reconstruction Finance Corporation Act, as amended, such determinations shall be made by the Federal Loan Administrator, with the approval of the President, and, notwithstanding any other provision of this Act or of any existing law, such commodity may be bought or sold, or stored or used, and such subsidy payments to domestic producers thereof may be paid, only by corporations created or organized pursuant to such section 5d; * * *."
Complainant seeks to draw a distinction between the objective of the Act of October 2, 1942, which, it asserts, is "the stabilization of prices and wages", and the purpose of the subsidy power conferred by § 2(e) of the Emergency Price Control Act, which is "to obtain the maximum necessary production." But there is no such antithesis. The stabilization of prices, and thus the prevention of a rise in the cost of living, which is one of the objectives of the Emergency Price Control Act, may necessitate the payment of subsidies to producers of certain commodities in order to assure the maximum necessary production thereof. The President evidently had this in mind in issuing Executive Order 9250, 50 U.S.C.A.Appendix, § 901 note, 7 F.R. 7871, establishing the Office of Economic Stabilization. In paragraph 2 of title V of that Executive Order, it is provided as follows:
"The Director may direct any Federal department or agency including, but not limited to, the Department of Agriculture (including the Commodity Credit Corporation and the Surplus Marketing Administration), the Department of Commerce, the Reconstruction Finance Corporation, and other corporations organized pursuant to Section 5d of the Reconstruction Finance Corporation Act, as amended, to use its authority to subsidize and to purchase for resale, if such measures are necessary to insure the maximum necessary production and distribution of any commodity, or to maintain ceiling prices, or to prevent a price rise inconsistent with the purposes of this Order."
The Director of Economic Stabilization, in his directive issued October 25, 1943, 8 F.R. 14641, above referred to, directing the Defense Supplies Corporation to amend its Regulation No. 3 so as to provide for the payment of the special subsidy of 80 cents per cwt. to non-processing slaughterers, recites that, consistent with "the stabilization and production programs", it is necessary to pay such subsidy in order to prevent undue hardship upon a "group of slaughterers whose output is needed to obtain the maximum necessary production".
It is true that this directive does not recite as one of the sources of its authority § 2(e) of the Emergency Price Control Act, but states that it is issued "pursuant to the authority vested in me by the Act of October 2, 1942" and by Executive Order No. 9250. But this is not significant. Executive Order No. 9250 establishing the Office of Economic Stabilization was issued pursuant to authority conferred upon the President in the Act of October 2, 1942 and, as we have seen, that order authorized the Director of Economic Stabilization to issue directives to various other agencies of the government having authority to subsidize. Congress had already conferred such authority, in § 2(e) of the Emergency Price Control Act; and paragraph 2 of title V of said Executive Order 9250, above quoted, has obvious reference, among other things, to said § 2(e).
Congress has evidently understood that the subsidy program rested upon the authority of § 2(e) of the Emergency Price Control Act. When it determined to put further restriction upon the payment of subsidies, it proceeded to do so by amending § 2(e). Section 102 of the Stabilization Extension Act of 1944 added at the end of § 2(e) the following:
"After June 30, 1945, neither the Price Administrator nor the Reconstruction Finance Corporation nor any other Government corporation shall make any subsidy payments, * * * unless the money required for such subsidies, * * * has been appropriated by Congress for such purpose; and appropriations for such purpose are hereby authorized to be made."
The report of the Senate Committee on Banking and Currency, commenting on this amendment, states: "The amendment allows a full year in which the present program may be continued, while next year's subsidy program is prepared for presentation to the Congress and its consideration by the Congress." S.Rep.No. 922, 78th Cong., 2d Sess., p. 8.
We conclude, without hesitation, that Amendment No. 2 is a regulation or order issued under § 2(e) of the Emergency *558 Price Control Act. Section 204(d) of the Act broadly provides that the Emergency Court of Appeals, and the Supreme Court upon certiorari, "shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2 * * *." It is true that our main concern has been, as it was expected to be, with price and rent regulations; and we have not found in the legislative history any express recognition by Congress that our jurisdiction extended also to reviewing the validity of subsidy regulations issued under § 2(e). But bearing in mind the considerations which led Congress to establish this special court, we see no reason to read the general language of 204(d)  "any regulation or order issued under section 2"  as impliedly excluding review by us of regulations or orders issued under § 2(e). In the report of the Senate Committee on Banking and Currency (Report No. 931, 77th Cong., 2d Sess.), it is stated:
"The committee bill substitutes judicial review of price and rent regulations and other regulations issued under section 2 [italics added] by a special court called the Emergency Court of Appeals for the judicial review by the circuit courts of appeals provided for in the House bill. * * * The Emergency Court is established in order to avoid the confusion which would result from conflicting decisions in different circuits on the same regulations. It will also permit the expenditious consideration and disposition of problems arising under the statute by a court familiar with its provisions and operation."
While the provision of § 204(d), quoted in the preceding paragraph, contains a general grant of jurisdiction to the Emergency Court of Appeals, §§ 203(a) and 204(a), as the Act was originally enacted, set forth the procedure by which our jurisdiction could be invoked; that is, by a complaint filed in this court after a protest duly filed under § 203(a) has been denied in whole or in part. It was not until the Stabilization Extension Act of 1944 added a new subsection (e) to § 204 that a complaint could be filed directly in this court without preliminary protest proceedings before the administrative agency. The new subsection 204(e), however, has no bearing on our present problem, for it authorizes the filing of a complaint directly in this court only upon leave of a court before which enforcement proceedings under § 205 are pending. Therefore, we conclude, our jurisdiction to review the validity of a subsidy order or regulation under § 2(e) can be invoked only after completion of protest proceedings in accordance with § 203.
The protest, dismissal of which is the foundation of the present complaint, was filed with the Price Administrator. It is evident from the scheme of §§ 203(a) and 204(a) that the only regulations or orders which may be protested to the Price Administrator are regulations or orders with respect to which such Administrator has power either to "grant or deny such protest in whole or in part." This conclusion is reenforced by the provision of § 204 (a) that the regulation or order "may be modified or rescinded by the Administrator at any time notwithstanding the pendency of such complaint" in the Emergency Court of Appeals.
Since meat has been defined by the President to be a "strategic or critical material", the effect of the proviso in § 2 (e), above quoted, is to lodge in an agency other than the Price Administrator the authority to make subsidy payments to the producers of this commodity. Amendment No. 2, the order challenged by complainant, was not issued by the Price Administrator, and could not be revoked or amended by him. He had no power in the premises. Notwithstanding this, the protest in the case at bar asks the Price Administrator to declare invalid certain provisions of Amendment No. 2 issued by the Defense Supplies Corporation. Furthermore, the pending complaint asks this court to set aside the challenged provisions of Amendment No. 2, though the only respondent named in the complaint is the Price Administrator, not the Defense Supplies Corporation which issued the amendment in question.
The protest, therefore, was not a protest properly filed with the Price Administrator pursuant to § 203(a) of the Act, and the Administrator had no choice but to dismiss the protest. Hence the filing of the present complaint did not give us jurisdiction to set aside Amendment No. 2 issued by the Defense Supplies Corporation. In any event, therefore, the present complaint must be dismissed.
We deem it proper to add that, as at present advised, but reserving decision on the point, we think complainant might have filed its protest to Amendment No. 2 with *559 the Defense Supplies Corporation and that, if such protest had been denied by that agency, the complainant might then have filed its complaint in this court under § 204 (a), naming the Defense Supplies Corporation as respondent.
As we have previously stated, § 204(d) confers on this court jurisdiction to determine the validity of Amendment No. 2, since it is a "regulation or order issued under section 2". But if, as we think, protest proceedings are a required preliminary to invoking our jurisdiction, the question arises, how can protest proceedings be instituted before the Defense Supplies Corporation under § 203(a) when that subsection refers only to the "Administrator" as the person entertaining and disposing of protests?
A closely similar situation might arise under § 201(b) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 921(b), which authorizes the President "to transfer any of the powers and functions conferred by this Act upon the Office of Price Administration with respect to a particular commodity or commodities to any other department or agency of the Government having other functions relating to such commodity or commodities." If, pursuant to this authority, the President should transfer, say, to the War Food Administrator, the function of issuing price regulations with reference to a particular commodity, we think the suggestion of the Administrator is correct that the protest and review procedures in §§ 203 and 204 "would follow the regulatory power". In other words, "Administrator" as used in §§ 203 and 204 ought reasonably to be read as meaning the Price Administrator or any other department or agency of the government to which has been transferred the statutory functions of the Price Administrator with reference to regulating the prices of the commodity in question. It could hardly have been the intention of Congress that the carefully devised protest and review procedures might be nullified by the exercise of the President's power under § 201(b) to transfer the functions of the Price Administrator to some other agency. And to hold, in that case, that the statutory protest might be filed with the substituted agency would be in harmony with the statutory scheme of §§ 203(a) and 204(a) of having first a reconsideration of the regulation in protest proceedings conducted by the administrative agency charged with the responsibility for the issuance and administration of the regulation in question before a complaint may be filed in this court.
The case at bar does not present quite the same situation as that just discussed, for we do not have here an instance where the President, pursuant to § 201(b) of the Act, has transferred to another agency or department a power or function conferred by the Act upon the Office of Price Administration. One way of putting it is to say that the statute itself in the above-quoted proviso of § 2(e) gives no power to the Price Administrator to make subsidy payments in respect to commodities defined by the President to be "strategic or critical"; such power the Act expressly lodges elsewhere. But this is only a superficial distinction. Under § 2(e), the Price Administrator has power, in respect of any particular commodity, to make subsidy payments to domestic producers thereof upon such terms as he determines to be necessary to obtain the maximum necessary production thereof, unless and until the President defines the particular commodity to be a strategic or critical material. In this latter event, the action of the President results by force of the statute in a transfer of the subsidy power, with reference to the particular commodity, from the Price Administrator to other agencies; and here, too, we think the protest procedure of § 203 must be read as intended to follow the regulatory power, for § 204(d) gives us jurisdiction to determine the validity of the subsidy regulation, and the Act as a whole indicates that our jurisdiction is not to be invoked until after a formal administrative reconsideration of the protested regulation.
The Stabilization Extension Act of 1944 added to § 2 of the Emergency Price Control Act a new subsection (m) reading as follows:
"No agency, department, officer, or employee of the Government, in the payment of sums authorized by this or other Acts of Congress relating to the production or sale of agricultural commodities, or in contracts for the purchase of any such commodities by the Government or any department or agency thereof, or in any allocation of materials or facilities, or in fixing quotas for the production or sale of any such commodities, shall impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful *560 regulations issued thereunder, under which such sums are authorized, such contracts are made, materials and facilities allocated, or quotas for the production or sale of any such commodities are imposed. Any person aggrieved by any action of any agency, department, officer, or employee of the Government contrary to the provisions hereof, or by the failure to act of any such agency, department, officer, or employee, may petition the district court of the district in which he resides or has his place of business for an order or a declaratory judgment to determine whether any such action or failure to act is in conformity with the provisions hereof and otherwise lawful; and the court shall have jurisdiction to grant appropriate relief. The provisions of the Judicial Code as to monetary amount involved necessary to give jurisdiction to a district court shall not be applicable in any such case."
Subsection (m) does not purport to withdraw from the Emergency Court of Appeals any jurisdiction theretofore granted to it. It is conceivable, however, that the effect of the subsection, in a narrow class of cases, may be to give to the district courts a jurisdiction concurrent with ours, and to that extent it may, inferentially, modify the provision of § 204(d) making our jurisdiction exclusive. Whether the complaint filed in the District Court in Illinois Packing Co. v. Defense Supplies Corporation, D.C., 57 F.Supp. 8, comes within the terms of § 2(m) of the Act as amended, we do not undertake to say.[1] The jurisdiction of the District Court in that case, as affected by § 2(m), will no doubt receive the consideration of the Circuit Court of Appeals for the Seventh Circuit in the appeal now pending.
A judgment will be entered dismissing the complaint.
NOTES
[1] The situations which Congress seems to have had specifically in mind as coming within the scope of subsection (m) may be found in Hearings on S. 1764, Committee on Banking and Currency, 78th Cong., 2d Sess., pp. 464-471; S. Rep. No. 922, Committee on Banking and Currency, 78th Cong., 2d Sess., p. 9; Cong. Rec. June 5, 1944, pp. 5382-5384.