**ATLANTIC MEAT CO., Inc., v. RECONSTRUCTION FINANCE CORPORATION.**

No. 248.

United States Emergency Court of Appeals. Heard at Boston Dec. 21, 1945.

Decided May 8, 1946.

Lawrence Black, of Boston, Mass. (John A. Lyons, of Boston, Mass., on the brief), for complainant.

John C. Erickson, of Washington, D. C. (John D. Goodloe, George B. Stoner, and James L. Dougherty, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

Atlantic Meat Company, Inc., challenges the validity of a provision of Amendment No. 2 (9 F.R. 1820) to Regulation No. 3 (8 F.R. 10826) issued by the Defense Supplies Corporation, under which provision

respondent has ruled that complainant was ineligible to receive the special subsidy of 80 cents per cwt. payable to non-processing slaughterers of cattle.[1]

█ A motion by respondent to dismiss the complaint for lack of jurisdiction was denied by us on the authority of Illinois Packing Co. v. Snyder, Em.App.1945, 151 F. 2d 337.

Our opinion in Earl C. Gibbs, Inc. v. Defense Supplies Corporation et al., Em. App.; 1946, 155 F.2d 525, sets forth in detail the background of this special subsidy to non-processing slaughterers, together with relevant statutory provisions and provisions of executive and administrative orders. These matters will not be repeated in extenso here.

During the period now in question, complainant was engaged in the slaughter of cattle, and sold 98 per cent or more of the total dressed carcass weight of cattle slaughtered by it in the form of carcasses or wholesale cuts. On November 1, 1943, when the special subsidy to non-processing slaughterers went into effect, complainant was wholly owned and controlled by General Foods Corporation. The latter corporation also owned and controlled Batchelder & Snyder Company, Inc. On and after April 3, 1944, the capital stock of complainant was directly owned by Batchelder & Snyder Company, Inc. Batchelder & Snyder is a hotel supply house, as that term is defined in RMPR 169. Hotel supply houses perform the functions of selecting, aging, boning and fabricating primal cuts into roasts, steaks, stews, etc., and otherwise preparing the meat ready for cooking. Under RMPR 169 they were allowed a liberal mark-up over applicable zone prices on sales of fabricated cuts to hotels and other purveyors of meals. See Oswald & Hess Co. v. Bowles, Em.App.1945, 148 F.2d 543, certiorari denied 1945, 325 U.S. 871, 65 S.Ct. 1411, 89 L.Ed. 1990.

Complainant put in its monthly claims for the special subsidy payable to non-processing slaughterers, but Defense Supplies Corporation disallowed the claims on the ground that complainant was not an "unaffiliated slaughterer" within the meaning of Amendment No. 2. On April 2, 1945, complainant filed with Defense Supplies Corporation its protest against the affiliation provisions of Amendment No. 2 whereunder non-processing slaughterers are ineligible for the special subsidy if they are "owned or controlled by a processor or purveyor of meat." On June 15, 1945, Defense Supplies Corporation by letter denied the protest, after which Atlantic Meat Company, Inc., filed the present complaint in this court.

█ As we explained in Earl C. Gibbs, Inc. v. Defense Supplies Corp. et al., supra, the purpose of the Directive of the Economic Stabilization Director issued October 25, 1943, was to make special provision by way of an extra subsidy to a limited group in the meat industry, namely, to those whose business consists entirely, or almost entirely, in the sale of dressed carcasses and wholesale cuts from the slaughter of cattle, and who derive no further profit, either direct or indirect, from processing operations in the broad sense. The term in the amended subsidy regulation denying the special subsidy to any slaughterer who is owned or controlled by a processor of meat is in our opinion a reasonable and appropriate provision for carrying into execution the general policy laid down in the Directive of October 25, 1943. See Earl C. Gibbs, Inc. v. Defense Supplies Corp. et al., supra.

█ Batchelder & Snyder is a processor of meat within the meaning of Amendment No. 2. Fabricating primal cuts into roasts and steaks for ready use by purveyors of meals is a form of further processing which increases the total return from the cattle operations beyond the yield from the sale of carcasses and wholesale cuts. If Batchelder & Snyder had done its own slaughtering as well as performing the

---

[1] Defense Supplies Corporation was originally named as respondent. This corporation, a wholly owned subsidiary of Reconstruction Finance Corporation (6 F. R. 2972), was dissolved, and its functions transferred to Reconstruction Finance Corporation, by Public Law 109, 79th Cong., 1st Sess., approved June 30, 1945, 59 Stat. 310. Upon motion of complainant, we entered an order on August 25, 1945, substituting Reconstruction Finance Corporation as respondent.

fabricating functions of a hotel supply house, it would clearly not have been eligible for the special subsidy to non-processing slaughterers. The Directive of October 25, 1943, did not use the shorthand term "non-processing slaughterers", but in paragraph 5 thereof directed the payment of the special subsidy to slaughterers who "sell 98% or more of the total dressed carcass weight of cattle slaughtered by them in the form of carcasses, wholesale cuts, frozen boneless beef (Army specifications) (carcass equivalent) or ground beef". The sale of beef in the form of fabricated cuts does not come within the terms of the Directive. Since Batchelder & Snyder in the case supposed would not, under the terms of the Directive, be entitled to the special subsidy, it is the purpose and effect of the affiliation provisions of the amended subsidy regulation of Defense Supplies Corporation to prevent Batchelder & Snyder and other processors (that is, persons who prepare and sell beef and beef products in forms other than those specified in the Directive) from obtaining the benefit of the subsidy by the device of conducting their slaughtering operations through subsidiary corporations. Cf. Great Northern Co-op. Ass'n v. Bowles, Em.App.1944, 146 F.2d 269, 271.

Thus far we have discussed the case as though Batchelder & Snyder directly owned and controlled the capital stock of complainant. Such was the situation on and after April 3, 1944. But complainant points out that during the period November 1, 1943 (when the special subsidy became effective) until April 3, 1944, complainant was owned and controlled by General Foods Corporation, which was also the parent corporation of Batchelder & Snyder. The argument is that, even under the wording of the amended subsidy regulation, a non-processing slaughterer is not ineligible for the special subsidy when it and a processor of meat are owned and controlled by a common parent. This we regard as a much too narrow reading of the regulation. The situation prior to April 3, 1944, was in substance no different from the situation after that date; in either case, payment of the subsidy to complainant would enure to the benefit of a person not within the group

intended by the Directive of October 25, 1943, to be the object of special relief. In the early period, in substance if not in form, General Foods Corporation (which owned complainant) was itself in the hotel supply house business through its subsidiary corporation Batchelder & Snyder, and thus was a "processor of meat" within the meaning of the subsidy regulation.

A judgment will be entered dismissing the complaint.