**ILLINOIS PACKING CO. v. HENDERSON et al.**

**No. 223.**

United States Emergency Court of Appeals.

Heard at Chicago May 28, 1946.

Decided Aug. 15, 1946.

Peter B. Atwood, of Chicago, Ill. (Irwin N. Walker and Walker & Atwood, all of Chicago, Ill., on the brief), for complainant.

Stephen R. Chummers, of Chicago, Ill. (John D. Goodloe, James L. Dougherty, and John C. Erickson, all of Washington, D. C., on the brief), for respondents.

Before MARIS, Chief Judge and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

Illinois Packing Company, the complainant here, is engaged in the slaughter of cattle and other livestock. During the period from November 1, 1943 to May 29, 1944 it sold 98% or more of the total dressed carcass weight of the cattle it slaughtered in the form of carcasses, whole sale cuts, frozen boneless beef (Army specification) (carcass equivalent) or ground beef. It claimed and was paid for the period from November 1, 1943 to April 30, 1944 the special subsidy of 80 cents per cwt. allowed to non-processing slaughterers by Amendment No. 2[1] to Regulation No. 3[2] issued byDefense Supplies Corporation, a wholly owned and since dissolved subsidiary of Reconstruction Finance Corporation. The amount of special subsidy thus received by the complainant was $308,520.08. During the period mentioned and prior thereto 48% of the common stock of the complainant was owned directly or indirectly by Pfaelzer Brothers who were processors or purveyors of meat. The remainder of the common stock was distributed among 31 other holders.

On May 20, 1944 Defense Supplies Corporation notified the complainant that it considered that the complainant was not entitled to the special subsidy allowed to non-processing slaughterers since over 10% of its stock was owned by a processor or purveyor of meat; Pfaelzer Brothers.[3] Defense Supplies Corporation thereupon recouped from the complainant the sum of $308,520.08 which it had received as special subsidy for the prior period and denied its claim for $48,086.95 as special subsidy for the period from May 1, 1944 to May 29, 1944. On May 29, 1944 Pfaelzer Brothers disposed of their stock in the complainant and thereafter Defense Supplies Corporation resumed payment to the latter of the special subsidy.

The complainant thereafter filed a protest against the regulation, as amended,

[1] 9 F.R. 1820.

[2] 8 F.R. 10826.

[3] Section 14 of Regulation No. 3, as added by Amendment No. 2, provided, inter alia:

"Section 14. Extra Compensation for Non-processing Slaughterers of Beef.

(a) Definitions.

"(1) 'Non-processing slaughterer of beef' means an unaffiliated slaughterer as hereinafter defined who during six consecutive months of 1942, sold, and who currently sells, 98% or more, measured in dressed carcass weight, of the total beef produced from cattle slaughtered by him in all his establishments, in the form of carcasses, wholesale cuts, boneless beef or ground beef.

"(2) 'Unaffiliated slaughterer' means a slaughterer * * * who is not owned or controlled by a processor or purveyor of meat. * * *

"(4) 'Own or control' means to own or control directly or indirectly a partnership equity or in excess of ten per cent of any class of outstanding stock or to have made loans or advances in excess of five per cent of the other person's monthly sales. * * *"

with Defense Supplies Corporation which the latter denied. The present complaint was then filed. A motion to dismiss the complaint as beyond the jurisdiction of this court was denied. Illinois Packing Co. v. Snyder, Em.App. 1945, 151 F.2d 337. After the passage of the Act of June 23, 1945 [4] the complainant filed a claim for relief under that act and succeeded in securing the repayment to it of the sum of $308,520.08 which Defense Supplies Corporation had required it to refund. It still claims, however, to be entitled to $48,068.95 special subsidy for the first 29 days of May, 1944, which it never received or refunded, and therefore continues to press this suit by which it seeks to have set aside so much of the definitions contained in Section 14 of Regulation No. 3 of Defense Supplies Corporation, as added by Amendment No. 2, as deny to it the classification of "unaffiliated slaughterer" and thereby deny it the right to receive the special subsidy provided for by the section.

The complainant contends that the definitions in question are unlawful in that they narrow the class of nonprocessing slaughterers entitled to receive the special subsidy to an extent not authorized by the Directive of the Economic Stabilization Director [5] pursuant to which Amendment No. 2 to Regulation No. 3 was issued. It further contends that the definitions are arbitrary and capricious in setting up a conclusive presumption of fact that a nonprocessing slaughterer is owned or controlled by a processor or purveyor of meat and is therefore not entitled to the special subsidy if more than 10% of any class of its stock is owned or controlled by the processor or purveyor of meat.

The question of the validity of the definitions contained in Section 14 of Regulation 3, as added by Amendment No. 2, was before this court in Earl C. Gibbs, Inc., v. Defense Supplies Corporation, 1946, 155 F. 2d 525. It is true that stock ownership was not involved in that case, the ownership or control of the complainant by a processor or purveyor of meat being in that case based upon the fact that the latter was a creditor of the complainant which had made loans or advances to it in excess of 5% of its monthly sales. The objection which the complainant in the present case raises to the definitions under which ownership or control is conclusively presumed to result from stock ownership in excess of 10% apply with equal if not greater force, however, to the conclusive presumption that ownership or control results from indebtedness in excess of 5% of monthly sales. Likewise the objection that the definitions unlawfully narrowed the class described in the Economic Stabilization Director's Directive applies equally to both cases.

Both groups of objections to the regulation, as amended, which are presented in this complaint were actually advanced and strongly urged by the complainant in the Gibbs case. After full consideration this court reached the conclusion that they were without merit. To that conclusion we adhere and we need add nothing to the discussion contained in the opinion of the court in that case. It is sufficient to say that the Gibbs decision squarely rules this case.

A judgment will be entered dismissing the complaint.

---

[4] 59 Stat. 260, 15 U.S.C.A. § 606b note.  [5] 8 F.R. 14641.