**GREENHOUSE BROS. & FINKELSTEIN, Inc., v. RECONSTRUCTION FINANCE CORPORATION.**

**No. 381.**

United States Emergency Court of Appeals.

Heard at New York Jan. 14, 1947.

Decided Feb. 5, 1947.

Writ of Certiorari Denied April 28, 1947.

See 67 S.Ct. 1200.

James A. Murray, of Washington, D. C. (W. D. Murray, of New York City, and Bond, Schoeneck & King, of Syracuse, on the brief), for complainant.

John C. Erickson, of Washington, D. C. (John D. Goodloe, George B. Stoner, and James L. Dougherty, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

This is another case in which a non-processing slaughterer of cattle claims to be aggrieved by a ruling that, under the provisions of Amendment No. 2 (9 F.R. 1820) to Regulation No. 3 (8 F.R. 10826) issued by Defense Supplies Corporation, it was ineligible to receive a special subsidy of 80¢ per cwt.[1]

Amendment No. 2 established a special subsidy to non-processing slaughterers pursuant to a Directive of the Economic Stabilization Director issued October 25, 1943 (8 F.R. 14641), and attached certain conditions to the payment of such subsidy. To be eligible for the special subsidy, a non-processing slaughterer, as defined, must be an "unaffiliated slaughterer", that is, it must not "own or control", or be "owned or controlled by", a "processor or purveyor of meat". The phrase "own or control" is defined as meaning "to own or control directly or indirectly a partnership equity or in excess of ten percent of any class of outstanding stock or to have made loans or advances in excess of five percent of the other person's monthly sales."[2]

Complainant, Greenhouse Bros. & Finkelstein, Inc., received the special subsidy for several months following November 1, 1943. On August 1, 1944, Defense Supplies Corporation ruled that complainant was not an "unaffiliated slaughterer" within the meaning of the regulation, and therefore was disqualified from receiving the special subsidy. Complainant was directed to repay the amount of the subsidies theretofore received.[3]

Under date of August 22, 1946, complainant filed with Reconstruction Finance Corporation its protest both against the

---

[1] Defense Supplies Corporation, a wholly owned subsidiary of Reconstruction Finance Corporation (6 F.R. 2972), was dissolved, and its functions transferred to Reconstruction Finance Corporation, by Public Law 109, 79th Cong., 1st Sess., approved June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 606b note.

[2] "Pursuant to a directive issued by the Office of Economic Stabilization on October 25, 1943 (8 F.R. 14641), Regulation No. 3 of Defense Supplies Corporation is hereby amended by adding a new § 7003.14, as follows:

"§ 7003.14 Extra compensation for non-processing slaughterers of beef—(a) Definitions. (1) 'Non-processing slaughterer of beef' means an unaffiliated slaughterer as hereinafter defined who during six consecutive months of 1942, sold, and who currently sells, 98% or more, measured in dressed carcass weight, of the total beef produced from cattle slaughtered by him in all his establishments, in the form of carcasses, wholesale cuts, boneless beef or ground beef.

"(2) 'Unaffiliated slaughterer' means a slaughterer who does not own or control a processor or purveyor of meat, and who is not owned or controlled by a proc-

essor or purveyor of meat. 'Unaffiliated slaughterer' shall not include any institution, representative or agency of Federal, State or local governments.

"(3) 'Processor or purveyor of meat' means a person who processes fresh beef or sells or dispenses fresh or processed meat or products containing meat, at wholesale or at retail, or in a hotel, restaurant or other eating establishment.

"(4) 'Own or control' means to own or control directly or indirectly a partnership equity or in excess of ten percent of any class of outstanding stock or to have made loans or advances in excess of five percent of the other person's monthly sales. * * *"

[3] The Price Administrator subsequently relieved complainant of the obligation to make such repayments, pursuant to the remedial provision of § 2 of Public Law 88, approved June 23, 1945, 59 Stat. 261, 15 U.S.C.A. § 606b note. The Price Administrator is authorized to grant such relief to a slaughterer not in a class eligible for the special subsidy where the slaughterer had received payment in good faith and in the reasonable belief that he was eligible, and where it would be inequitable to require repayment of the amounts so received.

affiliation provisions of the subsidy regulation and against the ruling of the Defense Supplies Corporation made thereunder.

Without further proceedings, Reconstruction Finance Corporation, under date of September 17, 1946, sent a letter to complainant denying the protest. In this letter respondent set forth its determination as follows:

"I. That said Regulation is in all respects valid;

II. That Renee Packing Co., Inc., is a processor or purveyor of meat;

III. That Greenhouse Bros. & Finkelstein, Inc. and Renee Packing Co., Inc., were at all times here involved affiliated;

IV. That Greenhouse Bros. & Finkelstein, Inc. is owned and controlled by the following officers and stockholders:

tion provisions of the subsidy regulation, complainant has not pressed this contention either in its brief or oral argument before us. The validity of the regulation has already been sustained by us in several cases. Earl C. Gibbs, Inc., v. Defense Supplies Corp., Em.App.1946, 155 F.2d 525, certiorari denied 67 S.Ct. 51; Atlantic Meat Co., Inc., v. Reconstruction Finance Corp., Em.App.1946, 155 F.2d 533, certiorari denied 67 S.Ct. 52; Illinois Packing Co. v. Henderson, Em.App.1946, 156 F.2d 1000, certiorari denied 67 S.Ct. 202.

The contention particularly urged is that, even under the language of the subsidy regulation, respondent and its predecessor Defense Supplies Corporation were in error in ruling that complainant was ineligible for the special subsidy. It is

| Officers: | | Stockholders: | |
|---|---|---|---|
| | | Total Shares Issued 614 | |
| President: | Paul Greenhouse | William Greenhouse | 144 shares |
| Vice " | Nathan Finkelstein | Paul Greenhouse | 129½ " |
| Sec. & Treas. | William Greenhouse | Nathan Finkelstein | 134½ " |
| | | Rose Greenhouse | 60 " |
| | | Estabel Greenhouse | 74 " |
| | | Fannie Finkelstein | 70 " |
| | | Eli Gingold (atty.) | 1 " |
| | | Jessie Hecker | 1 " |
| | | Total | 614 " |

V. That Renee Packing Co., Inc. is owned and controlled by the following officers and stockholders:

| Officers: | | Stockholders: | |
|---|---|---|---|
| | | Total Shares Issued 695 | |
| President: | Eli Gingold | William Greenhouse | 231 2/3 |
| 1st Vice Pres. | William Greenhouse | Paul Greenhouse | 231 2/3 |
| 2nd Vice Pres. | Nathan Finkelstein | Nathan Finkelstein | 231 2/3 |
| Sec. & Treas. | Paul Greenhouse | | |
| | | Total | 695 |

VI. That such common ownership and control constitute affiliation within the terms of said Regulation, disqualifying Greenhouse Bros. & Finkelstein, Inc., from eligibility to receive the extra compensation of eight-tenths of one cent per pound."

Upon denial of the protest, the present complaint was filed in this court.

Although both the protest and the complaint challenge the validity of the affiliation provision does not specifically include the situation of a non-processing slaughterer and a processor of meat under "common control".

Various statutes are referred to in which careful draftsmen have explicitly covered the situation of two or more businesses under "common control", e. g., § 2(b) of the Communications Act of 1934, 48 Stat. 1065, 47 U.S.C.A. § 152(b), § 2(a) (3) of the Investment Company Act of 1940, 54 Stat. 791, 15 U.S.C.A. § 80a—2(a) (3), and § 210 of the Interstate Commerce Act, as amended, 54 Stat. 923, 49 U.S.C.A. § 310. It is said that complainant, as a separate legal entity, does not hold any stock in Renee Packing Co., Inc., and that Renee Packing Co., Inc., as a separate legal entity, does not hold any stock in complainant; and, therefore, that the two companies are not affiliated within the definition of "own or control" set forth in the regulation. The further contention is made that the present case is not within any of the conventional categories in which it is justified to disregard the corporate entities and to treat the common stockholders as if they were themselves the proprietors of the two businesses.

We are not persuaded by these arguments. Of course it might have been better draftsmanship if the situation of "common control" had been explicitly covered in the regulation; but the question still remains as to the fair interpretation of the language used, in the light of the underlying purpose of the affiliation provisions, as explained in our opinion in the Gibbs case, supra. The argument based on the absence of express language dealing with "common control" was made in Atlantic Meat Co., Inc., v. Reconstruction Finance Corp., supra, and there rejected by us. In that case, General Foods Corporation owned and controlled two subsidiary corporations, Atlantic Meat Co., Inc., a non-processing slaughterer, and Batchelder & Snyder, a hotel supply house. We held that Atlantic Meat Co., Inc., was affiliated with a processor of meat, within the meaning of the regulation, and thus disentitled to the subsidy. In our opinion we said, 155 F.2d at page 535: "The argument is that, even under the wording of the amended subsidy regulation, a non-processing slaughterer is not ineligible for the special subsidy when it and a processor of meat are owned and controlled by a common parent. This we regard as a much too narrow reading of the regulation. The situation prior to April 3, 1944, was in substance no different from the situation after that date; in either case, payment of the subsidy to complainant would enure to the benefit of a person not within the group intended by the Directive of October 25, 1943, to be the object of special relief. In the early period, in substance if not in form, General Foods Corporation (which owned complainant) was itself in the hotel supply house business through its subsidiary corporation Batchelder & Snyder, and thus was a 'processor of meat' within the meaning of the subsidy regulation."

We see no substantial distinction between the situation where the common ownership of stock is in a group of individuals, as in the present case, and that where the common ownership of stock is in a parent corporation, as in the Atlantic Meat Co. case.

Another way of putting it, quite consistent with the language of the subsidy regulation, is to say that Renee Packing Co., Inc., a processor of meat, through its officers and sole stockholders, William Greenhouse, Paul Greenhouse, and Nathan Finkelstein, "indirectly" controls over fifty per cent of the outstanding stock of complainant. There is thus a disqualifying affiliation between the non-processing slaughterer and a processor of meat.

A judgment will be entered dismissing the complaint.