## HARLINGEN CANNING CO. v. COMMODITY CREDIT CORPORATION.

### Civ. No. 535.

United States District Court
S. D. Texas, Brownsville Division.
Sept. 23, 1950.

Strickland, Wilkins, Hall & Mills (Harry L. Hall), of Mission, Texas, and Looney, Clark & Moorhead (Everett L. Looney and Donald S. Thomas), of Austin, Texas, for plaintiff.

Brian S. Odem, U. S. Atty. and Wm. R. Eckhardt, III, Asst. U. S. Atty. both of Houston, Texas, for defendant.

HANNAY, District Judge.

This is an action brought by the Harlingen Canning Company, a Texas corporation, against the Commodity Credit Corporation, a Delaware corporation, to recover subsidy in the sum of $30,758.66, claimed to be due in connection with canned tomato products packed and sold by plaintiff during the 1946 season. The case was tried to the Court.

Plaintiff's original claim was for $63,-330.43, which was partially paid. The amount here sued for was disallowed and an appeal from such action was prosecuted with the Department of Agriculture in the Contract Disputes Board, where such appeal was denied. The denial of the subsidy herein sued for was based largely on the ground that the sales involved were made to H. E. Butt Grocery Company, which company defendant claims was, at such time, an affiliate of plaintiff.

The legislative and administrative background of the subsidy program is in part as follows: Defendant Commodity Credit Corporation was originally a Delaware corporation having power under its charter to buy, sell and otherwise deal in commodities and to engage in activities relating to the production, handling and marketing of such commodity, and such activities included power to carry out subsidy programs.

On June 29, 1948, after the filing of this suit against the Delaware Corporation, Congress enacted the Commodity Credit Corporation Charter Act. 15 U.S.C.A. § 714 et seq. This Act provided for the dissolution of the Delaware Corporation and the Delaware Corporation was dissolved on September 15, 1948. Such Act established a new corporation under the name of the Commodity Credit Corporation and granted it a Federal charter. All assets and liabilities of the Delaware Corporation were transferred to the new Corporation and all enforcible claims of or against the Delaware Corporation became claims of or against and enforcible by or against the Federal Corporation. This Act further provides for exclusive jurisdiction in the United States District Court of all suits brought by or against the Federal Corporation. 15 U.S.C.A. § 714b (c).

As a part of the war program, Congress enacted the Emergency Price Control Act of 1942, Title 50 U.S.C.A.Appendix, § 901 et seq. Section 902(e) of this Act pro-

vided for the making of subsidy payments to domestic producers of commodities, upon terms and conditions deemed necessary by the Administrator where funds for the payment of the subsidy had been previously approved by Congress. This statute also created the Emergency Court of Appeals and provided procedure for review in that Court. Section 924, 50 U.S.C.A.Appendix, provides in part that the Emergency Court of Appeals shall have exclusive jurisdiction to set aside regulations, orders or price schedules promulgated under the Act.

The Emergency Price Control Act of 1942 was amended in part by the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961 et seq. This Act authorized the President to issue a general order stabilizing prices, wages and salaries. Under the authority contained in the Stabilization Act and other applicable statutes, the President promulgated Executive Order 9250, Title 50 U.S.C.A.Appendix, § 901 note. This Executive Order authorized the Office of Economic Stabilization to "direct * * * the Department of Agriculture [including the Commodity Credit Corporation] * * * to use its authority to subsidize * * *."

Pursuant to the authority granted by Executive Order 9250, as amended, the Director of Economic Stabilization on May 8, 1946, issued Directive 109. By this Directive, the Department of Agriculture was ordered by the use of Commodity Credit Corporation funds to make subsidy payments to canners with respect to eligible sales of canned tomato products consumed during the period from March 1, 1946, through June 30, 1946. This Directive further provided: "(d) If any product subsidized in accordance with Directive is suspended or exempt from price control, sales of such products to purchasers other than Government procurement agencies made after such suspension or exemption goes into effect shall not be subsidized: * * *".

Congressional action providing funds for carrying out the 1946 vegetable crop program operation was the subject of Directive 109 and is contained in Public Law 30, 79th Congress, 59 Stat. 51, as amended by Public Law 328, 79th Congress, 60 Stat.

57, 15 U.S.C.A. § 713 note. The statute as amended provides in its applicable portions as follows: "Sec. 3. The last paragraph of section 2(e) of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944, shall not apply to the operations of the Commodity Credit Corporation for the fiscal year ending June 30, 1946: Provided, That the making of subsidy payments and the buying of commodities for resale at a loss, by the Commodity Credit Corporation, shall be limited as follows: Obligations for making such payments and absorbing such losses may be incurred and paid by the Commodity Credit Corporation * * * (b) in amounts which do not involve subsidy payments or losses in excess of * * * (3) $225,000,000 with respect to the * * * (B) 1946 crop program operations relating to * * * vegetables processed prior to July 1, 1946 * * *."

As appears from the body of the directive itself, before Directive 109 was issued, the Director of Economic Stabilization requested the Secretary of Agriculture and the Price Administrator to submit information in regard to the proposed program. In order to carry out this request, the Secretary of Agriculture and the Commodity Credit Corporation prepared its docket covering the 1946 canned vegetable subsidy program. This docket set forth an outline of the proposed program and authorized the vegetable branch of the Commodity Credit Corporation to proceed with the development of the contract and other operation forms necessary to carry out the program, following in general the procedure and forms used in connection with the 1945 program. This docket was approved by the Board of Directors of the Commodity Credit Corporation and the Secretary of Agriculture prior to the issuance of Directive 109 and was available to the Director of Economic Stabilization at the time that Directive was issued.

On May 17, 1946, a press release was issued in which it was stated that the 1946 program would be substantially the same as that conducted in 1945, but also stated that no sales made after any product was

exempt from price control would be subsidized.

On June 27, 1946, the contract covering the 1946 canned vegetable program was received and executed by the Harlingen Canning Company. The Company at that same time received instructions and procedure covering this program. The contract was entered into by the parties as of February 2, 1946, and contained the following provision with regard to eligible sales: " 'Eligible sales' shall not include a transfer of title to a designated canned food by a canner to any person or firm controlled by or affiliated with such canner by stock ownership, partnership arrangement, any kind of agreement or otherwise until such person or firm has transferred title to a person or firm not so controlled or affiliated unless the Commodity Credit Corporation determines otherwise."

The instructions covering the 1946 canned vegetable subsidy program contained the following statement on Page 19: "The term 'affiliate' means any person or firm controlled by or affiliated with such canner by stock ownership, partnership arrangement, any kind of agreement, or otherwise. Shipments or transfer of a designated canned food to a canner's affiliate who is authorized and licensed to add a mark-up on canner's civilian ceiling price may be construed as eligible sale on submittal or proof that such affiliate is legally entitled to add such mark-up."

All raw tomatoes purchased by Harlingen Canning Company and canned and processed into the items and products on which its claim for subsidy is based, were purchases at or above the designated average grower's price for Texas.

The Harlingen Canning Company transferred the canned tomato products on which subsidy is claimed, to the H. E. Butt Grocery Company and received payment therefor prior to June 30, 1946. Such products were not sold by H. E. Butt Grocery Company prior to July 1, 1946 (except for a possible small portion, the amount not proved.)

H. E. Butt, as of the date of such transfers, owned one hundred per cent of the stock of the Harlingen Canning Company and eighty-five per cent of the stock of the H. E. Butt Grocery Company, and he actually and actively controlled both companies. H. E. Butt was president of both these companies at all times material hereto, and the companies were, therefore, affiliated companies.

All products were exempt from price control during the period July 1 through July 25, 1946, and price control was discontinued in November, 1946.

The Commodity Credit Corporation refused payment of subsidy to plaintiff on the transfers made to the H. E. Butt Grocery Company in the absence of the submittal of proof of resale prior to July 1, 1946, by that company.

The points to be determined are:

1. Whether or not plaintiff has the right to sue defendant in this District Court of the United States:

2. Whether or not the provisions of the contract between plaintiff and defendant with respect to eligibility of sales to affiliates are valid and binding upon plaintiff: and

3. Whether, under the provisions of the contract, plaintiff is entitled to receive the subsidy sued for.

I will discuss the issues in this case in the order in which they have been set out above:

*Point I.* On the question of whether or not defendant is immune from suit, I quote Section 714b, 15 U.S.C.A.:

"714b. General powers of Corporation

"The Corporation— * * * (c) May sue and be sued, * * *. The district courts of the United States, including the district courts of the District of Columbia * * * shall have exclusive original jurisdiction of all suits brought by or against the Corporation, Provided, * * * any suit against the corporation shall be brought in the District of Columbia, or in the district wherein the plaintiff resides or is engaged in business."

The case of United States v. Edgerton & Sons, Inc., 178 F.2d 763, in the United States Court of Appeals for the Second

Circuit, before L. Hand, Swan and Frank, Circuit Judges, held: "When United States conducts business transactions through a corporation, such corporation does not possess sovereign immunity unless expressly endowed with it."

█ Unquestionably, under the authority quoted above and the cases therein cited, and under the charter powers of Commodity Credit Corporation, plaintiff had the right to sue the Commodity Credit Corporation in this District Court.

*Point II.* Passing to the second point, which is likewise a question of jurisdiction, —that is, the right of the District Court to determine the meaning of the regulations, although the exclusive right to pass upon the validity thereof rests in the Emergency Court of Appeals and the Supreme Court.

The Commodity Credit Corporation issued Directive 109, which provided with regard to eligible sales as follows: " 'Eligible sale' shall not include a transfer to a designated canned food by canner to any person or firm controlled by or affiliated with such canner by stock ownership, partnership arrangement, any kind of agreement, or otherwise, until such person or firm has transferred title to a person or firm not so controlled or affiliated, unless Commodity determines otherwise."

Page 19 of the Instructions covering the 1946 canned vegetable subsidy contains the following: "The term 'affiliate' means any person or firm controlled by or affiliated with such canner by stock ownership, partnership arrangement, any kind of agreement, or otherwise. Shipments or transfers of designated canned foods to a canner's affiliate who is authorized and licensed to add a mark-up on canner's civilian ceiling prices may be construed as eligible sales on submittal of proof that such affiliate was entitled to add such mark-up."

█ It is my opinion that this Directive merely formulated the broad outline establishing the policy to be carried out by the Secretary of Agriculture through the Commodity Credit Corporation in administering the program.

The case of Earl C. Gibbs, Inc., v. Defense Supplies Corporation, Em.App., 155 F.2d 525, certiorari denied, 329 U.S. 737, 67 S.Ct. 51, 91 L.Ed. 637, holds: "Provision in amendment to regulation issued by Defense Supplies Corporation denying special subsidy to a non-processing slaughterer * * * of meat in an amount in excess of 5 per cent of its monthly sales was not arbitrary or inappropriate for carrying into execution the general policy laid down in directive of the economic stabilization director, though application of amendment might result in hardship to an individual non-processing slaughterer who might not in fact be controlled by his creditor processor."

Further, 155 F.2d at page 530, the court said: "We do not think that the affiliation provisions in Amendment No. 2 can be held unauthorized and invalid merely on the ground that they establish additional conditions on eligibility for the special subsidy beyond those prescribed in the Directive of October 25, 1943. As above explained, the basic authority to provide for the payment of meat subsidies is vested in the Federal Loan Administrator by § 2(e) of the Emergency Price Control Act. In exercising such authority, the Federal Loan Administrator must conform to 'directives on policy' issued by the Economic Stabilization Director; beyond that, however, the detailed implementation of the subsidy program remains a function of the Federal Loan Administrator."

To the same effect is the case of Atlantic Meat Co. v. Reconstruction Finance Corporation, Em.App., 155 F.2d 533, writ of certiorari denied, 329 U.S. 737, 67 S.Ct. 52, 91 L.Ed. 637.

Further, if the subsidy was payable under Section 902(e), 50 U.S.C.A.Appendix, then plaintiff's attack on the validity of the order or regulations of the Commodity Credit Corporation comes within the exclusive jurisdiction of the Emergency Court of Appeals. See Reconstruction Finance Corporation v. Burlison, 5 Cir., 171 F.2d 329, and Wm. Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corporation, Em. App., 169 F.2d 419, writ of certiorari denied, 335 U.S. 846, 69 S.Ct. 68, 93 L.Ed. 396.

50

*Point III.* Plaintiff is not entitled to receive the subsidy sued for under the provisions of its contract with defendant. Section (1) (j) of the contract entered into between the parties provides in part as follows: " 'Eligible sale' shall not include a transfer of title to a designated canned food by a canner to any person or firm controlled by or affiliated with such canner * * * unless Commodity determines otherwise."

Under this provision of the contract it is abundantly clear that plaintiff must have transferred the title to the canned goods to a person or firm other than an affiliate, unless the Commodity Credit Corporation had otherwise determined, in order to be eligible for the payment of the subsidy.

It is stipulated that the canned tomato products for which the subsidy is claimed were transferred by Harlingen Canning Company to the H. E. Butt Grocery Company and that they had not been resold (except for a possible small portion, the amount not proved) prior to the end of the period set by the contract on June 30, 1946. It is undisputed that Harlingen Canning Company and the H. E. Butt Grocery Company are affiliated companies.

Plaintiff submitted its claim for payment of the subsidy herein involved to the Commodity Credit Corporation and determination was made that the transfers of canned tomato products to H. E. Butt Grocery Company were not eligible for payment of subsidy. This action of the Commodity Credit Corporation was affirmed by the Contract Disputes Board of the Department of Agriculture. However, plaintiff contends that it is entitled to payment of the subsidy because of the provisions contained in the instructions covering the 1946 canned vegetable subsidy program (set out on page 19 of the Instructions), which is as follows: "The term 'affiliate' means any person or firm controlled by or affiliated with such canner by stock ownership, partnership arrangement, any kind of agreement, or otherwise. Shipments or transfers of designated canned foods to a canner's affiliate who is authorized and licensed to add a mark-up on canner's civilian ceiling prices may be construed as eligible sales

on submittal of proof that such affiliate was entitled to add such mark-up."

Defendant Commodity Credit Corporation reserved in itself discretion to reject claims where proof that the affiliate was entitled to add a mark-up of ceiling prices over that of the canner was submitted. No such proof was made by plaintiff in this case. The canned goods in question were transferred to an affiliate and same were not resold before the end of the period set by the contract on June 30, 1946. On the trial of the case, H. E. Butt Grocery Company was unable to furnish either the dates the canned goods were actually sold or the price at which same were sold.

■ In view of the facts admitted in the Stipulations filed herein, the proof adduced on the trial of the case, and the law which I have heretofore discussed, I am convinced that the provisions in regard to "eligible sales" contained in the contract, were valid. It therefore, follows that plaintiff is not entitled to recovery. All court costs in this proceeding are adjudged against plaintiff.

Let proper judgment be prepared and presented.

Clerk will notify counsel.