**ATLANTIC MEAT CO., Inc., v. RECON-
STRUCTION FINANCE COR-
PORATION.**

No. 4250.

Circuit Court of Appeals, First Circuit.

Feb. 5, 1948.

Lawrence Black (of. Lyons & Black), of Boston, Mass., for appellant.

John J. Burns, of Boston, Mass. (John F. Rich, Harold B. Dondis, and Burns, Blake & Rich, all of Boston, Mass., of counsel), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and HEALEY, District Judge.

MAHONEY, Circuit Judge.

The plaintiff brought this action in the district court to obtain a declaratory judgment that the Defense Supplies Corporation was indebted to it in the sum of $674,847.94 as payment for subsidies allegedly owed to it.[1]

The Director of the Office of Economic Stabilization on October 25, 1943, "pursuant to the authority vested in [him] by the Act of October 2, 1942, entitled 'An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation and for other purposes,'" 50 U.S.C.A.Appendix, § 961 et seq., and certain executive orders, issued a directive which provided for the payment of a special subsidy to certain non-processing slaughterers of meat, and directed the Defense Supplies Corporation to amend its Regulation No. 3 in accordance with the directive.[2]

On October 30, 1943, Amendment No. 2 to Regulation No. 3 was issued by the Defense Supplies Corporation. It provided for extra compensation for non-processing slaughterers of beef and contained the condition that to be entitled to such special subsidy a non-processing slaughterer must be an "unaffiliated slaughterer," in that it does not own or control and is not owned or controlled by a processor or purveyor of meat.[3]

---

[1] The action was brought against the Defense Supplies Corporation, a subsidiary of the Reconstruction Finance Corporation. The former was dissolved and all its liabilities, assets, and authority, transferred to the Reconstruction Finance Corporation by Public Law 109, 79th Cong. 1st Sess. approved June 30, 1945, 59 Stat. 310. The latter has been substituted as party defendant.

[2] "5. Slaughterers who during the year 1942, or a representative portion thereof, sold and who currently sell, 98% or more of the total dressed carcass weight of cattle slaughtered by them in the form of carcasses, wholesale cuts, frozen boneless beef (Army specifications) (carcass equivalent) or ground beef, shall be paid in addition to the payments authorized by Regulation No. 3 of Defense Supplies Corporation (Livestock Slaughter Payments), the amount of 0.80 per cwt. of cattle slaughtered during the month for which such payments are made.

"6. Defense Supplies Corporation is directed to amend Regulation No. 3

(Livestock Slaughter Payments) in accordance with this Directive." 8 Fed. Reg. 14641 (1943).

[3] "Pursuant to a directive issued by the Office of Economic Stabilization on October 25, 1943 (8 F.R. 14641), Regulation No. 3 of Defense Supplies Corporation is hereby amended by adding a new Paragraph 7003.14, as follows:

"Par. 7003.14. Extra Compensation for Non-Processing Slaughterers of Beef —(a) Definitions. (1) 'Non-Processing slaughterer of beef' means an unaffiliated slaughterer as hereinafter defined who during six consecutive months of 1942, sold, and who currently sells, 98% or more, measured in dressed carcass weight, of the total beef produced from cattle slaughtered by him in all his establishments, in the form of carcasses, wholesale cuts, boneless beef or ground beef.

"(2) 'Unaffiliated slaughterer' means a slaughterer who does not own or control a processor or purveyor of meat, and who is not owned or controlled by a

The plaintiff was denied the subsidy by the Defense Supplies Corporation on the ground that the plaintiff was not an unaffiliated slaughterer within the definition contained in Amendment No. 2 to Regulation No. 3. From November 1943 until March 1944, the plaintiff and Batchelder & Snyder Company, Inc., a "Hotel Supply House" were owned by General Foods Corporation. After March 1944, the plaintiff was wholly owned by Batchelder & Snyder.

The plaintiff in its complaint alleged that it always has been a non-processing slaughterer within the definition contained in the directive and is entitled to the additional payment specified therein, since it currently sells, and its predecessor in title sold during a representative portion of 1942, 98% or more of the total dressed carcass weight of cattle slaughtered by them in the form of carcasses, wholesale cuts or frozen boneless beef or ground beef. It asserted that Batchelder & Snyder is a Hotel Supply House within the definition contained in the Revised Maximum Price Regulation 169 and that Batchelder & Snyder Company is engaged in the fabrication of meat cuts and the sale of fabricated meat cuts as distinct from processed meat to purveyors of meals. The plaintiff asserted that the condition imposed by Amendment No. 2 that a non-processing slaughterer also be unaffiliated constitutes an imposition of a condition by an agency of the Government not authorized by the provisions of the Emergency Price Control Act or any other Act or lawful regulation; that the condition imposed by the Defense Supplies Corporation, that a non-processing slaughterer in order to qualify as such for the additional subsidy not be under joint control with a processor of meat, constitutes the imposition of a condition not authorized by the provisions of the Emergency Price Control or any other Act and is not authorized even under the defendant's Amendment No. 2 to Regulation No. 3; that the fabrication of beef by a Hotel Supply House is not processing and that a Hotel Supply House is not a processor or purveyor of meat within the definition contained in the defendant's Regulation No. 3 as amended, and thus the condition imposed by the defendant that a non-processing slaughterer, in order to qualify as such for the additional subsidy, may not be owned by or under joint control with a Hotel Supply House, constitutes the imposition of an unauthorized condition, even under the defendant's amended Regulation No. 3.

Thus, the plaintiff's claims, summarily stated, are that it is a non-processing slaughterer of meat; that it comes within the terms of the Directive of October 24, 1943; that Amendment No. 2 to Regulation No. 3 is invalid because it adds unauthorized conditions to the Directive; that in any event the plaintiff has fulfilled the conditions of Regulation No. 3 as amended; and that if plaintiff is not given the subsidy the effect of price regulations will be to deprive it of property without due process of law.

Plaintiff sought as relief a declaration that it had complied with the directive, that the amendment was invalid, that in any event it had complied with the regulation as amended, and that the failure to pay the subsidy denied plaintiff of property without due process of law; and an injunction requiring defendant to pay plaintiff the subsidy.

The defendant moved to dismiss upon the grounds that the court was without jurisdiction to entertain the complaint and the action was against the United States, which had not consented to be sued. While this matter was pending, the plaintiff brought suit against the same defendant in the United States Emergency Court of Appeals, making substantially the same allegations. In an opinion filed May 8, 1946, that court held that it had jurisdiction; that Batchelder & Snyder Company is a processor of meat within the meaning of

processor or purveyor of meat, 'Unaffiliated slaughterer' shall not include any institution, representative or agency of Federal, State, or local governments.

"(3) 'Processor or purveyor of meat' means a person who processes fresh beef or sells or dispenses fresh or processed meat or products containing meat, at wholesale, or at retail, or in a hotel, restaurant or other eating establishment." 9 Fed.Reg. 1820 (1943).

Amendment No. 2; that the amendment denying the special subsidy to any slaughterer who is owned or controlled by a processor of meat is a reasonable and proper provision for carrying into execution the general policy laid down in the Directive of October 25, 1943, and that the amended regulation is broad enough to cover a nonprocessing slaughterer who is under the joint control of a common parent with a processor. A judgment of the Emergency Court of Appeals was entered dismissing the complaint. Atlantic Meat Co. v. Reconstruction Finance Corp., Em.App., 1946, 155 F.2d 533, certiorari denied, 1946, 329 U.S. 737, 67 S.Ct. 52.

On May 31, 1946 the defendant, without waiving its motion to dismiss, filed a motion in the district court for summary judgment on the ground that the judgment of the United States Emergency Court of Appeals dismissing the above described action between the same parties was res judicata of the issues in the instant case. On June 10, 1946 the motion to dismiss and the motion for summary judgment were heard and taken under advisement. The lower court on October 30, 1946 granted the motion for summary judgment and ordered judgment for the defendant. The plaintiff appealed, contending that the Emergency Court was without jurisdiction and its judgment was a nullity.

In this court, both parties briefed and argued the case on the question of the effect of the judgment of the Emergency Court. Upon our study of the case, however, we had serious doubts as to the jurisdiction of the district court to entertain the action. Both parties were given an opportunity to file additional memoranda on the question of the district court's jurisdiction.

■ After consideration of the memoranda submitted to us, our doubts were affirmed, and we now conclude that the district court below was without jurisdiction. The plaintiff purported to base its action upon § 2(m) of the Emergency Price Control Act as added by the Act of June 30, 1944, 58 Stat. 632, 50 U.S.C.A.Appendix, § 902(m)[4] and the Declaratory Judgment Act, 48 Stat. 955, 28 U.S.C.A. § 400. Section 2(m) gives the district courts jurisdiction to grant declaratory judgments and appropriate relief in cases of unlawful conditions or penalties imposed in the payment of sums relating to the production or sale of agricultural commodities. It must be noted that this is a limited grant, which was clearly enacted for the benefit of the farmer. Both § 2 and § 3 of the Emergency Price Control Act contain many exceptions for the benefit of farmers, who were given special consideration throughout the entire Act. Congress was anxious that the elaborate farm control system which had evolved in the last decade not be upset by the Price Control Act. Thus, numerous exceptions were made in relation to agricultural commodities but it can hardly be supposed these were for the benefit of large industrial processors.

■ In both § 2 and § 3, "agricultural commodity" is used in contradistinction to "commodity manufactured or processed in whole or substantial part from any agricultural commodity." See, e.g., §§ 2(e), 2(i), 3(c), 3(e). It is clear that the plaintiff here is engaged in the production and sale of commodities manufactured or processed from agricultural commodities, and that the subsidy it is seeking relates to production of commodities manufactured

---

[4] Emergency Price Control Act of 1942, § 2(m):

"No agency, department, officer, or employee of the Government, in the payment of sums authorized by this or other Acts of Congress relating to the production or sale of agricultural commodities, * * * shall impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful regulations issued thereunder, under which such sums are authorized * * *. Any person aggrieved by any action of any agency, department, officer, or employee of the Government contrary to the provisions hereof, or by the failure to act of any such agency, department, officer, or employee, may petition the district court of the district in which he resides or has his place of business for an order or a declaratory judgment to determine whether any such action or failure to act is in conformity with the provisions hereof and otherwise lawful; and the court shall have jurisdiction to grant appropriate relief."

from agricultural commodities,[5] not to the production of agricultural commodities. The legislative history of § 2(m) does not indicate that producers of commodities processed from agricultural commodities were to be included. The withholding from a farmer of rationing coupons for failure to participate in the program of the War Food Administration was cited as a representative abuse that § 2(m) was designed to correct. See Sen.Rep. No. 922, 78th Cong., 2d. Sess. 9 (1944). Nowhere is there any indication that Congress intended to allow large processors, such as packers, to resort to the district courts to contest orders or conditions. The Committee which conducted hearings and drafted the proposed bill was largely concerned with what was called "bureaucratic blackmail." All the examples given were of conditions imposed by local bodies—largely the War Food Administration—on local farmers. See Hearings Before Committee on Banking and Currency on S. 1764, 78th Cong., 2d Sess., 464–71 (1944). It was stated that the bill was intended to prevent flagrant misuse of authority for imposition of conditions or penalties totally unrelated to the purposes for which the authority was granted. The amendment was not intended primarily to relate to the Price Administration, but was intended to prevent the enforcement of one act by threatening penalties under another. See 90 Cong.Rec. 5291–92 (1944). It is true that Senator Taft, speaking from the floor stated that "the amendment does not cover anything outside the sale of agricultural commodities and things processed therefrom." See 90 Cong.Rec. 5292 (1944). But the amendment itself spoke only of agricultural commodities. The discussion on the floor centered largely on the necessity for the amendment, not on the extent of the coverage. We would not be justified in using this statement by a single member of the Senate that the amendment related to both agricultural commodities

and things processed therefrom to extend the scope of the amendment when the amendment itself only mentions the former.

We are further confirmed in our view that carcasses and wholesale cuts of beef are not agricultural commodities but are commodities processed from agricultural commodities by the decision of the Emergency Court of Appeals in Superior Packing Co. v. Clark, 1947, 164 F.2d 343, 349. The question in issue there was the validity of certain regulations concerning the price of carcasses and wholesale cuts of meat. The complainant contended that the regulations, having been issued without the approval of the Secretary of Agriculture were void by reason of § 3(e) of the Emergency Price Control Act, which required the Secretary's approval before the Administrator could act in regard to agricultural commodities.[6] This contention was rejected, the court stating:

"A live steer is an 'agricultural commodity', produced on a farm and sold by a farmer in its raw, natural or unprocessed state. A beef carcass, a wholesale cut, retail cuts such as steaks or roasts, beef brains, kidneys, hearts, livers, or other edible by-products, as well as meat products resulting from still further processing, such as sausages—these are all distinct commodities not produced on the farm and sold by farmers. They are not 'agricultural commodities', but commodities 'processed or manufactured in whole or substantial part' from an agricultural commodity, the live steer. The slaughterer's operation of producing these various meat products would be described as a processing operation in the everyday use of words, and it certainly is such from the point of view of the steer."

To the same effect is United States v. Charney, D.C.D. Mass., 1942, 50 F.Supp. 581.

The plaintiff argues, however, that agricultural commodity as used in § 2 differs from agricultural commodity as used in

---

[5] The subsidy was intended to relieve the "squeeze" that certain slaughterers were caught in between high livestock prices and low ceilings for their products. See Earl C. Gibbs, Inc. v. Defense Supplies Corp., Em.App., 1946, 155 F.2d 525, certiorari denied, 1946, 329 U.S. 737, 67 S.Ct. 51.

[6] At the crucial times involved in that case approval of the Secretary of Agriculture was required only for agricultural commodities. Section 3(e) has since been amended. See 59 Stat. 307 (1945), 50 U.S.C.A.Appendix, § 903(e).

§ 3. We find nothing in the statute itself or in the legislative history to indicate that the same phrase should be given a different meaning in two sections of the same act. It also should be noted that the Act specifically defines agricultural commodity as used throughout the Act to include livestock. 59 Stat. 308 (1945), 50 U.S.C.A. Appendix, § 942(*l*). But the definition does not include commodities produced from livestock.

■ The plaintiff also urges that slaughterers can not be considered as producing commodities *processed* from agricultural commodities since the subsidy involved is payable only to non-processing slaughterers, and this would involve a contradiction in terms. Substantially the same contention was made in Superior Packing Co. v. Clark, supra, and rejected. The Emergency Court of Appeals stated that its decision that meat products are commodities processed from agricultural commodities was not inconsistent with the fact that the complainant there would be described as a non-processing slaughterer within the Defense Supply Corporation's subsidy regulation. It said that the term as used in the regulation is there specifically defined for a limited purpose and it is evident the differential subsidy was to benefit persons engaged almost exclusively in the slaughter of cattle and the preparation and sale of beef carcasses and wholesale cuts, as distinguished from slaughterers more highly integrated in their operations who engage in the further processing of beef carcasses and other materials derived from slaughter into profitable by-products such as sausages, lard, tankage, grease, fertilizer, pharmaceuticals, oils, etc.

We agree completely with the Emergency Court that there is no inconsistency in saying that a "non-processing slaughterer" within the meaning of the Defense Supplies Corporation regulation does not produce or sell agricultural commodities but commodities processed from agricultural commodities.

■ Since no question of a condition or penalty involving agricultural commodities is presented, the court had no jurisdiction under § 2(m). And it is clear that the Declaratory Judgment Act alone is not sufficient to give jurisdiction. That Act confers no additional jurisdiction on the district courts but merely adds a new procedural device. In essence the suit is one to recover money from the Government, and as such it is a suit against the United States to which the United States has not consented. The doctrine of sovereign immunity to suits is not confined to cases where the sovereign is a party of record, but instead the essential nature and effect of the proceeding is the test. See Ex parte New York, 1921, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057. Here the sole purpose of the action is to collect a debt allegedly owed by the Government; it is an attempt to fix the Government's liability in a suit to which the Government has not consented. Since any judgment obtained would have to be satisfied from the public treasury, it is clearly a suit against the sovereign and barred as such in the absence of consent. Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140; see Land v. Dollar, 1947, 330 U.S. 731, 737, 738, 67 S.Ct. 1009.

There may still be another reason why the district court was without jurisdiction in this action, at least insofar as the plaintiff seeks to attack the validity of the Defense Supplies Corporation's regulation. If the amended regulation be considered a regulation under § 2 of the Price Control Act—as the district court held, and as has been previously held, Illinois Packing Co. v. Snyder, Em.App., 1945, 151 F.2d 337; Illinois Packing Co. v. Bowles, Em.App., 1945, 147 F.2d 554, the exclusive review procedure provided in § 204(d) of the Act, 50 U.S.C.A.Appendix, § 924(d), would prevent attack in any court except the Emergency Court of Appeals. It is extremely dubious whether § 2(m), even in the case of agricultural commodities, was intended to permit an attack upon the validity of regulations in the district courts. Samett v. Reconstruction Finance Corp., 10 Cir., 1947, 165 F.2d 605; Illinois Packing Co. v. Defense Supplies Corp., D.C.N.D. Ill., 1944, 57 F.Supp. 8, affirmed sub nom. Illinois Packing Co. v. Reconstruction Finance Corp., 7 Cir., 1946, 156 F.2d 875. The Committee which recommended the amend-

ment incorporating § 2(m) into the Act specifically stated that exclusive jurisdiction of the Emergency Court of Appeals in cases concerning the validity of regulations was left unchanged. See Sen.Rep. No. 922, 79th Cong., 2d. Sess. 58 (1944). Both the hearings before the Committee and the discussion of the bill on the floor of the Senate indicate that the amendment was not intended to make such a far reaching change, but merely to prevent the enforcement of one act by threatening penalties under another. See Hearings before Committee on Banking and Currency on S. 1764, 78th Cong. 2d. Sess. 464-71 (1944); 90 Cong. Rec. 5291-92 (1944). But since the plaintiff claims alternatively that even if valid the defendant's regulation does not prevent payment to him, we rest our conclusion upon the inapplicability of § 2(m) in cases involving carcasses and wholesale cuts of meat, which are not agricultural commodities.

The judgment of the District Court is vacated and the cause is remanded to that court with directions to dismiss for lack of jurisdiction.