## WM. SCHLUDERBERG–T. J. KURDLE CO.
## v. RECONSTRUCTION FINANCE
## CORPORATION.
### No. 454.

United States Emergency Court of Appeals.
Heard at Washington March 29, 1948.
Decided July 29, 1948.

Writ of Certiorari Denied Oct. 18, 1948.
See 69 S.Ct. 68.

Arthur L. Winn, Jr., of Washington, D. C. (Wilbur La Roe, Jr., Frederick E. Brown and Samuel H. Moerman, all of Washington, D. C., on the brief), for complainant.

George Arthur Fruit, Atty., Department of Justice, of Washington, D. C. (Joseph M. Friedman, Sp. Asst. to Atty. Gen., and Samuel K. Abrams, of Washington, D. C., and Alexander Boskoff, of Brooklyn, N. Y., Attorneys, all of the Department of Justice, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MAGRUDER, Judge.

This case involves the general subsidy payable to slaughterers of livestock under the subsidy regulation of the Reconstruction Finance Corporation. Complainant submitted to the RFC its claims for subsidies on livestock slaughtered between the period September 1, 1946, and October 14, 1946, inclusive, the latter being the date on which price controls on meat were finally lifted by administrative action. The RFC ruled that, in computing the subsidy payments to complainant, an appropriate deduction must be made on account of meat derived from slaughter during the above period and remaining in complainant's inventory at 12:01 A. M. October 15, 1946, complainant having been free to sell such meat at uncontrolled prices.

Since the subsidy regulation had been issued pursuant to § 2(e) of the Emergency Price Control Act of 1942, 56 Stat. 26, 50 U.S.C.A.Appendix, § 902(e), the foregoing ruling or determination by the RFC thereunder was in effect a "regulation or order under section 2", subject to protest under § 203(a) of the Act and to review in the Emergency Court of Appeals under § 204(a). Illinois Packing Co. v. Bowles, Em.App.1945, 147 F.2d 554; Illinois Packing Co. v. Snyder, Em.App.1945, 151 F.2d 337; Greenhouse Bros. & Finkelstein, Inc., v. R.F.C., Em.App.1947, 159 F.2d 712, cert. denied 1947, 331 U.S. 812, 67 S. Ct. 1200, 91 L.Ed. 1832; Armour & Co. v. R.F.C., Em.App.1947, 162 F.2d 918, 923. Though the Price Control Act terminated on June 30, 1947, 60 Stat. 664, the jurisdiction of this court in the case at bar is preserved by § 1(b) of the Act, since the protest and complaint are founded upon an asserted "right" in complainant, with a corresponding "liability" of respondent, incurred under the subsidy regulation prior to such termination date. Our jurisdiction has not been challenged.

The case has been quite elaborately presented by counsel, but our views can be set forth in fairly brief compass.

In previous cases we have discussed the origin, purposes and mechanics of the meat subsidy program. Armour & Co. v. Bowles, Em.App.1945, 148 F.2d 529, 532, 533; Illinois Packing Co. v. Bowles, supra; Earl C. Gibbs, Inc., v. Defense Supplies Corp., Em.App.1946, 155 F.2d 525; Federated Meat Corp. v. Fleming, Em.App.1947, 159 F.2d 725.

In June, 1943, as part of the President's hold-the-line policy (Executive Order 9328, 50 U.S.C.A.Appendix, § 901 note, 8 F.R. 4681), the Price Administrator, by amendment of the various price regulations, rolled back or reduced the maximum prices on beef, veal, pork, lamb and mutton by approximately 10 per cent (8 F.R. 7671, 7675, 7679). The Director of Economic Stabilization and the Federal Loan Administrator duly determined to compensate the slaughterers for this reduction by the payment to them of corresponding subsidies. Such subsidies were thereupon established, effective as of June 7, 1943, by Regulation No. 3 (8 F.R. 10826) issued by Defense Supplies Corporation. This corporation, created under § 5d of the Reconstruction Finance Corporation Act, as amended, 15 U.S.C.A. § 606b (6 F.R. 2972), was empowered to act as paying or disbursing agent in respect to the subsidies to livestock slaughterers.

Regulation No. 3 of DSC was amended from time to time, in particulars which need not now be stated, and was reissued as Revised Regulation No. 3, effective January 19, 1945 (10 F.R. 4241). DSC was dissolved on July 1, 1945, and its functions transferred to RFC by the Act of June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 601 note. Revised Regulation No. 3, as amended, was then taken over by RFC (10 F.R. 11155). There was a temporary lapse of price controls on June 30, 1946, upon the termination of the Emergency Price Control Act, as amended. In anticipation of this, on June 21, 1946, RFC had issued a public announcement that the "statutory authority under which the livestock slaugher payments are made by RFC expires June 30, 1946. No payments will be made by RFC on slaughter after June 30, 1946, unless new legislation is effective in the interim." The Price Control Extension Act of 1946 became law July 25, 1946, 60 Stat. 664. By Directive No. 1 (11 F.R. 9138), the Price Decontrol Board, created by that Act, authorized the reimposition of price ceilings on meat and the reestablishment of livestock subsidy payments. Pursuant thereto the Price Administrator, on August 23, 1946, issued Amendment No. 1 to Supplementary Order No. 177 (11 F.R. 9372) making the various price regulations on meat effective again, with respect to slaughterers, as of September 1, 1946. The Director of Economic Stabilization, by Directive No. 130 (11 F.R. 9375), determined that the reestablishment of the subsidy programs was "necessary to insure the maximum necessary production and distribution of livestock and its products, to maintain and administer price ceilings with reference to livestock and its products, and to prevent price rises inconsistent with the stabilization laws." He accordingly reissued his former directives with respect to the payment of subsidies and directed RFC to make the subsidy programs effective again, beginning September 1, 1946. RFC did this by issuing, on August 28, 1946, its Regulation No. 10, providing that subsidy payments would be made to eligible slaughterers of cattle, calves, hogs and pigs slaughtered on and after September 1, 1946, in accordance with all the terms and conditions of Revised Regulation No. 3, as amended, the provisions of which were incorporated by reference.[1]

Price controls on meat, which had been reimposed on September 1, 1946, as applied to slaughterers, remained in effect only through October 14, 1946, when they were removed by Amendment 64 to Supplementary Order 132 (11 F.R. 12093). Complainant concedes that it is not entitled to subsidies on account of any livestock slaughtered on or after October 15, 1946; but insists that, under subsidy regulation as written, subsidies are payable on account

---

[1] We are informed that Regulation No. 10 was given general circulation by RFC and was sent to the Federal Register for publication but did not appear therein.

of livestock slaughtered during the period September 1-October 14, 1946, when price controls were in effect, without regard to when the meats produced by such slaughter were sold, and even though such meats were sold on a free market after government price controls had been lifted. We think that this contention is in error.

■■ From the outset, the subsidy regulation has provided that subsidies shall be computed upon the basis of the amount of livestock slaughtered by an applicant during a given monthly accounting period, rather than upon the basis of the amount of meat sold by the slaughterer during such period. But this basis of computation was adopted only as a matter of administrative convenience. It is clear that the subsidy program was instituted, and maintained, to compensate the producers of meat for the "squeeze" between livestock prices and the maximum prices at which they were permitted to sell their meat products. See Rubin v. Bowles, Em.App.1945, 150 F.2d 860, 861; 89 Cong.Rec. 6495. As we have pointed out, the subsidy regulation was one of the mechanisms of the price control program and, as contemplated by Congress, the subsidies were in the nature of compensatory payments so as to validate a lower level of legal maximum prices than otherwise would have been permissible under the standards laid down in the Price Control Act for the guidance of the Price Administrator. Illinois Packing Co. v. Snyder, Em.App.1945, 151 F.2d 337, 339. Complainant indeed recognizes in its brief: "These [subsidy] payments, while in the form of slaughter payments, were not compensation for the slaughter conducted under price control but for the meat sold under price control. There was no loss occasioned by the slaughter itself for which compensation might legally be provided under Section 2(e) of the Act. The use of the slaughter basis for payments was mere form and was employed for convenience. The compensation was required because of the low level of the maximum selling prices for meat and the compensation was for the meat sold under price control." Consistently with the presupposition of the subsidy regulation that the meat derived from livestock slaughtered during a given accounting period would be sold by the slaughterer at regulated maximum prices, the subsidy regulation provided that no subsidy would be paid on account of the liveweight equivalent of meat condemned by federal inspectors at the time of slaughter as unsatisfactory for human consumption. Likewise, payment of the subsidy was conditioned upon compliance by the slaughterer with the maximum prices applicable to his meat products.

When the subsidy program was originally established, in June, 1943, there was the problem of what to do about inventories of meat derived from slaughter prior to the date, June 7, 1943, on which subsidies for livestock slaughter were to commence. Such inventories were unsubsidized, under the terms of DSC Reg. No. 3, but the matter was taken care of in the price rollback amendments to the various meat regulations by postponing the effective dates of the 10 per cent reduction in meat maximum prices so as to enable slaughterers to dispose of their unsubsidized inventories without loss. See 89 Cong.Rec. 6495.

When price controls temporarily lapsed, on June 30, 1946, with the termination of the Emergency Price Control Act, complainant had on hand inventories of meat which were derived from livestock slaughter during the prior period of price control. Complainant was free to sell these meats on July 1, 1946, and during the ensuing weeks, on an uncontrolled market. In fact, complainant collected its full subsidies on its livestock slaughtering operations prior to July, 1, 1946, without any deduction on account of inventories on hand on that date; and RFC has not undertaken to recapture any such payments.

Complainant argues that it is inequitable for RFC to make any deduction from subsidy payments for livestock slaughter during the period September 1, 1946, to October 14, 1946, on account of inventories on hand at 12:01 A. M. October 15, 1946, when price controls on meat were lifted, because RFC had paid no subsidies on account of livestock slaughter during the interregnum period (July 1, 1946, to September 1, 1946), from which slaughter com-

plainant had derived large inventories of meat which it had on hand on September 1, 1946, and which it had to dispose of subject to the maximum prices reimposed on that date. But the regulations reimposing such maximum prices postponed the effective dates thereof for a week or more so as to enable slaughterers to dispose of unsubsidized inventories at uncontrolled prices. Whether the period allowed was adequate for this purpose might conceivably have a bearing upon the validity of such reimposed maximum prices; but we are not now concerned with that matter, for the proceeding at bar is not an attack upon the validity of the price regulations. It concerns only complainant's right to subsidy payments under the enabling law and RFC's Regulation No. 10.

We are now brought to a more precise consideration of the terms of the Price Control Extension Act of 1946, 60 Stat. 664, which contained important limitations upon the authority to make subsidy payments. It was declared to be the policy of Congress "that the general control of prices and the use of subsidy powers shall, subject to other specific provisions of this Act, be terminated as rapidly as possible consistent with the policies and purposes set forth in this section and in no event later than June 30, 1947". 60 Stat. 664, § 3, 50 U.S.C.A.Appendix, § 901a(b). The Act empowered the Price Decontrol Board "to determine, when maximum prices are in effect with respect to [meat], whether any subsidy or any part thereof in effect prior to June 30, 1946, shall be reestablished in whole or in part". 60 Stat. 668, § 3, 50 U.S.C.A.Appendix, § 901a(e) (9). Section 2(e) of the Emergency Price Control Act was amended so as to put limitations upon the authority of RFC to make subsidy payments. Such payments were authorized with respect to operations for the fiscal year ending June 30, 1947, as follows:

" * * * (4) With respect to noncrop programs, * * * $869,000,000: *Provided,* That the operations authorized under this subparagraph (4) [that is, the subsidy-paying operations of RFC] shall be progressively reduced, shall be terminated not later than April 1, 1947, and shall not cost more than $629,000,000 during the last six months of the calendar year 1946. *Operations* [that is, again, subsidy-paying operations] *shall not be carried out under authority of this subparagraph (4) with respect to any commodity for any period occurring after the date of the enactment of this Act during which maximum prices on such commodity are not in effect* under the Emergency Price Control Act of 1942, as amended, or the Stabilization Act of 1942, as amended * * *" 60 Stat. 671, 672, § 6(a) (4), 15 U.S.C.A. § 713 note, italics added.

Two further relevant provisions were added by the Price Control Extension Act of 1946, (1) that when any subsidy "is reduced or terminated, or upon recontrol is not restored or is restored only in part, any maximum price applicable to the product affected shall be correspondingly increased", and (2) that where "roll-back subsidies have previously been or presently are in effect, and have been discontinued, or shall hereafter be discontinued, the industries which have received such subsidies shall be permitted to increase their ceiling prices at least an amount equivalent to the amount of the discontinued roll-back subsidy." 60 Stat. 672, § 6(b, c), 15 U.S.C.A. § 713 note.

We think that these provisions, taken as a whole, sufficiently emphasize the tie-up between subsidies and maximum prices imposed by law, and indicate a congressional purpose to condition the subsidy-paying authority upon the continued existence of price controls on the commodity or commodities to be subsidized. They make it unlawful for RFC to provide subsidy payments on account of meats in a slaughterer's inventory on and after October 15, 1946, when price controls were removed, even though the slaughterer may have produced such meat by livestock slaughter prior to that date. We have already pointed out that though in form the subsidy was computed upon the basis of the amount of livestock slaughtered during a given accounting period, the subsidy was not upon the slaughtering operations as such, but was a compensatory payment to

slaughterers for meat sold under price control. Therefore, the fact that meat was produced by slaughter during a period when price controls were in effect became of no significance with respect to such meat as remained in the slaughterer's inventory, undisposed of, when meat price controls were removed.

The ruling of RFC complained of in this proceeding was to be anticipated by slaughterers not only because of the terms of the Price Control Extension Act of 1946, above set forth, but also because of the concluding provision of Regulation No. 10 to the effect that the regulation shall terminate automatically "on the failure of any condition required by law as a prerequisite to validity of a subsidy on livestock or meat." This would seem to have reference to the provisions of the Act which we understand make it unlawful for RFC to pay subsidies to a slaughterer on account of meat remaining in his inventory after decontrol.

 Complainant objects to "Announcement No. 1 under Regulation No. 10" issued by RFC on March 31, 1947, as being in effect an attempt retroactively to revoke by mere announcement obligations which were contained in the published subsidy regulation and were validly assumed by RFC in fulfillment of statutory requirements. We think this objection is misconceived.

This Announcement recited that the "volume of meat held in inventories by slaughterers at the close of business on October 14, 1946 (the date of termination of price controls on meat) was substantial, and such inventories were, of course, sold thereafter at uncontrolled prices."[2] It recited further that the Office of Temporary Controls, which had absorbed the duties of the Office of Economic Stabilization (11 F.R. 14281), had determined that in view of the provisions of the Price Control Extension Act of 1946 and in order to avoid unjust enrichment of packers at the expense of the government, "subsidies allocable to these inventories should be recaptured". After stating that this would not be done in so-called "de minimis cases" because of the disproportionate administrative burden involved, the Announcement continued that large slaughterers, as defined, would be required to report their inventories of meat on hand at the close of business October 14, 1946, on a form to be provided for this purpose. Complainant supplied the information requested on the form subsequently furnished by RFC, and in accordance with further detailed instructions. On the basis of the information thus reported, RFC computed the deduction from subsidy payments on account of complainant's terminal inventory.[3]

Announcement No. 1 was not a retroactive repudiation of obligations assumed by RFC, nor an impairment of complainant's vested rights. For the reasons already set forth, complainant's right to claim subsidies on account of livestock slaughtered during the period September 1, 1946, to October 14, 1946, was, under the law, subject to an inherent condition subsequent that the meat derived from such slaughter must be disposed of prior to the removal of price controls. The announcement merely served notice upon slaughterers that they would have to furnish information as to their terminal inventories in order to enable RFC to make a final determination of the amount of subsidy payments legally due. Of course, the termination of price controls did not impair already accrued claims for livestock slaughter payments on account of meat sold

---

[2] Complainant states that practically all the meat in its inventory on October 15, 1946, was sold within the first five days following the termination of price control at prices which did not exceed the maximum prices previously maintained by the Price Administrator. If so, this was a matter of voluntary choice on complainant's part. Upon decontrol on October 15, 1946, there were immediate general increases in meat prices at all levels by at least the amount of the subsidy which had been withdrawn. Legally, the deduction on account of terminal inventories was required irrespective of the prices at which a particular subsidy applicant may have sold the meat he had on hand at the time price controls were removed.

[3] The instructions accompanying the reporting forms called for the conversion of carcass weights in the inventories into liveweight equivalents. The amount to be deducted from the subsidy payment was computed on the latter.

while price controls were still in effect. Section 7003.12 of Revised Regulation No. 3, which was incorporated by reference in Regulation No. 10, provided that the termination of the regulation "shall not preclude the filing of claims on account of livestock slaughtered on or before the date of termination for which the applicant would otherwise have been eligible."

A judgment will be entered dismissing the complaint.