## SWIFT & CO. v. RECONSTRUCTION FINANCE CORP.

No. 9832.

United States Court of Appeals,
Seventh Circuit.
June 21, 1950.

Joseph M. Friedman, Sp. Asst. to Atty. Gen., H. G. Morison, Assistant Attorney General, Maurice C. Handelman, Assistant United States Attorney, Otto Kerner, Jr., U. S. Attorney, John P. Lulinski, Asst. U. S. Atty., Chicago, Ill., and Anthony L. Mondello and George Arthur Fruit, Attys., Department of Justice, Washington, D. C., for appellant.

Edward R. Johnston, Albert E. Jenner, Jr., Edward H. Hatton, all of Chicago, Ill., Edgar Byron Kixmiller, William N. Strack, Poppenhusen, Johnston, Thompson & Raymond, all of Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

On June 30, 1947, plaintiff filed its complaint for declaratory judgment and other appropriate relief authorized by Section 2 (m) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 902(m), averring that, prior to price control termination, it had continuously purchased and slaughtered livestock and processed and sold meats and meat products therefrom; that thereby it became entitled to subsidies for which from time to time it had filed its claims and received payment except that there remained due and unpaid on valid claims the sum of $221,861.51; that defendant, on or about March 31, 1947, subsequent to termination of price control, had issued its "Announcement No. 1," wherein it stated that the Office of Temporary Price Controls had determined that, in view of Section 6(a) (4) of the Price Control Extension Act of 1946, 15 U.S.C.A. § 713 note, in order to avoid unjust enrichment of packers, subsidies allocable to the volume of processed meat held in inventory on October 14, 1946, the date of termination of price control on meat, should not be paid or, if paid, recaptured. Plaintiff prayed a declaratory judgment determining that Announcement No. 1 and defendant's action in pursuance thereof were not in conformity with the terms and provisions of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and were "otherwise unlawful, capricious, arbitrary, void and of no effect," and that the court enjoin defendant from carrying out or enforcing the announcement and enter judgment requiring defendant to pay plaintiff the sum of $221,861.51.

In its answer defendant admitted plaintiff's averments as to the existence of the

subsidy program and the previous payments to plaintiff and that plaintiff was insisting that the claim mentioned in the complaint which had been denied should be paid, representing, as defendant said, subsidies on processed goods held by plaintiff at the time of termination of control. However, defendant denied the District Court's jurisdiction on the ground that as to all complaints attacking the validity of regulations, rules, orders, and price lists issued in pursuance of Section 2 of the Price Control Act, by Section 204(d) jurisdiction was vested exclusively in the United States Emergency Court of Appeals and denied to the District Court, and that Section 2(m) of the Act did not apply to the suit.

The trial court made specific findings of fact and conclusions of law, expressly finding that it had jurisdiction to entertain the cause of action and, in effect, held Announcement No. 1 invalid and entered judgment as prayed. From this defendant appeals.

At the outset we are confronted by the question as to the jurisdiction of the District Court to entertain the suit. Announcement No. 1 was issued under R. F. C.'s Regulation No. 10, issued in turn under Section 2(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 902(e). Reg. 10, incorporated by reference Rev.Reg. No. 3 as amended. These regulations prescribed terms and conditions governing meat subsidies for the period from September 1

through October 14, 1946. Plaintiff's basis for its claim of jurisdiction in the trial court is Section 2(m) of the Price Control Act, 50 U.S.C.A.Appendix, § 902(m), appearing in the footnote. [1]

It will be observed that Section 2(m), which grants, under named conditions, certain jurisdiction to the District Court, is confined to "the payment of sums * * * relating to the production or sale of agricultural commodities." Admittedly, before the District Court has jurisdiction to proceed under this Section, it is essential that it appear that the subject matter of the suit relates to the "production or sale of agricultural commodities." If the term "agricultural commodities" be considered in its strict literal sense, it will embrace, of course, livestock and other raw farm products but not the products manufactured or processed from such raw commodities. However, plaintiff insists that under the circumstances existing here, the term includes meat processed by slaughtering cattle. Upon this primary question the parties are in sharp controversy.

This specific question was before the Court of Appeals of the First Circuit in Atlantic Meat Co., Inc. v. Reconstruction Finance Corp., 166 F.2d 51, where the court considered at length the contention that Section 2(m), was intended to apply to products resulting from processing agricultural commodities, and declined to give it support.

[1] "No agency, department, officer, or employee of the Government, in the payment of sums authorized by this or other Acts of Congress relating to the production or sale of agricultural commodities, or in contracts for the purchase of any such commodities by the Government or any department or agency thereof, or in any allocation of materials or facilities, or in fixing quotas for the production or sale of any such commodities, shall impose any conditions or penalties not authorized by the provisions of the Act or Acts, or lawful regulations issued thereunder, under which such sums are authorized, such contracts are made, materials and facilities allocated, or quotas for the production or sale of any such commodities are imposed. Any person aggrieved by any action of any agency, department, officer, or employee of the Government contrary to the provisions hereof, or by the failure to act of any such agency, department, officer, or employee, may petition the district court of the district in which he resides or has his place of business for an order or a declaratory judgment to determine whether any such action or failure to act is in conformity with the provisions hereof and otherwise lawful; and the court shall have jurisdiction to grant appropriate relief. The provisions of the Judicial Code as to monetary amount involved necessary to give jurisdiction to a district court shall not be applicable in any such case."

■ It is clear, we think, that the Congress, itself, in its legislation providing for price control, stabilization, subsidies and other matters relating to control, made clear distinction between agricultural commodities and goods processed therefrom. Thus in Section 3 of the Act, subsection (a) dealt with agricultural commodities and subsection (c) with "commodities processed or manufactured in whole or in substantial part from any agricultural commodities." Equally clear distinction between agricultural commodities and food products processed or manufactured in whole or in substantial part from agricultural commodities appears in other portions of the Act, as in Section 3(e) and Section 2(e). We think it obvious that whenever Congress intended to include within the general term "agricultural commodity," goods processed from such commodities, it made express statement to that effect, as in the 1945 amendment of Section 302 and in the 1946 amendment, known as Section 1a (e) (4) B, 50 U.S.C.A.Appendix, § 901a (e) (4) (B), and that the Act reflects a clear intention upon the part of Congress to exclude from agricultural commodities goods processed or manufactured therefrom except where it expressly provided to the contrary.

In Tambasco v. Reconstruction Finance Corporation, 2 Cir., 178 F.2d 283, 285, the court said: "It is settled by statute that livestock is an 'agricultural commodity' within the meaning of the act, 50 U.S.C.A. Appendix, § 942(1); but it has been authoritatively determined that meat and meat products are not. Superior Packing Co. v. Clark, Em.App., 164 F.2d 343. And while the subsidy regulation here was couched in terms of livestock slaughter as a matter of industry convenience, the subsidy was really on meat. Wm. Schluderberg-T. J. Kurdle Co. v. R. F. C., Em.App., 169 F.2d 419, certiorari denied 335 U.S. 846, 69 S.Ct. 68 [93 L.Ed. 396]. To stretch the meaning of 'agricultural commodity' so as to include plaintiff's activities here would do violence to the legislative intent in writing the section. Atlantic Meat Co. v. R. F. C., 1 Cir., 166 F.2d 51."

Equally persuasive is the language of Superior Packing Co. v. Clark, Em.App., 164 F.2d 343 at page 349, as follows: "A live steer is an 'agricultural commodity', produced on a farm and sold by a farmer in its raw, natural or unprocessed state. A beef carcass, a wholesale cut, retail cuts such as steaks or roasts, beef brains, kidneys, hearts, livers, or other edible by-products, as well as meat products resulting from still further processing, such as sausages—these are all distinct commodities not produced on the farm and sold by farmers. They are not 'agricultural commodities', but commodities 'processed or manufactured in whole or substantial part' from an agricultural commodity, the live steer."

■ We conclude that Section 2(m) vested the District Court with no jurisdiction to entertain the action, for this suit is not one relating to sale of agricultural commodities. Consequently, any basis for jurisdiction in the District Court must be found elsewhere in the Acts of Congress.

There is no question, of course, but that by Section 204(e) of the Price Control Act, the United States Emergency Court of Appeals is given exclusive jurisdiction to review the validity of orders, regulations and price schedules established or entered by the proper administrative body under Section 2 of the Act.. The same section expressly denies jurisdiction to any other court whether federal, state or territorial, to pass upon these questions. Consequently, if Announcement No. 1 comes within the category of subject matter, exclusive jurisdiction of which is vested in the United States Emergency Court of Appeals and the suit involves validity, it is clear that the District Court had no jurisdiction.

■ However, plaintiff asserts that Announcement No. 1, though it contends that the same is not justified by the law and is arbitrary, is not such an order, ruling or other action as comes within the category of matters reviewable only in the Emergency Court of Appeals. That court has held that Announcement No. 1 and the implementing action were orders or regulations issued under Section 2, specifically Section 2(e), of the Price Control Act, in Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corp., Em.App., 169 F.2d 419, 420.

The Reconstruction Finance Corporation had ruled there as here, that, in computing the subsidy payments to plaintiff, an appropriate deduction must be made on account of meat derived from slaughter prior to termination of price control but remaining on hand at the time of such termination, plaintiff being free to sell such meat at uncontrolled prices. The court said: "Since the subsidy regulations had been issued pursuant to § 2(e) of the Emergency Price Control Act of 1942, (56 Stat. 26), the foregoing ruling or determination by the R.F.C. thereunder was in effect a 'regulation or order under Section 2', subject to protest under § 203(a) of the Act and to review in the Emergency Court of Appeals under § 204(a). Illinois Packing Co. v. Bowles, Em.App.1945, 147 F.2d 554; Illinois Packing Co. v. Snyder, Em.App. 1945, 151 F.2d 337; Greenhouse Bros. & Finkelstein, Inc. v. Reconstruction Finance Corporation, Em.App.1947, 159 F.2d 712, cert. denied, 1947, 331 U.S. 812, 67 S.Ct. 1200, 91 L.Ed. 1832; Armour & Co. v. Reconstruction Finance Corporation, Em.App. 1947, 162 F.2d 918, 923."

The United States Court of Appeals for the Second Circuit, in Tambasco v. Reconstruction Finance Corp., 178 F.2d 283, followed the same reasoning in these words: "There is another persuasive argument against a conclusion that the district court has jurisdiction in this action. Section 204(d) of the Emergency Price Control Act of 1942 gives the Emergency Court of Appeals exclusive jurisdiction to determine the validity of any regulation or order issued under § 2 of the Act, and expressly withdraws any jurisdiction to consider the validity of such regulations or orders from all other federal and state courts. Even though Control Order No. 2, which is challenged here, may not initially have been issued under the Price Control Act, it was made pursuant to a directive of the Director of Economic Stabilization, Amendment 4 to Directive 41, 11 F.R. 4340, and an R.F.C. regulation, Livestock Slaughter Payments Regulation No. 3 Revised, § 7003.10(a)(4), both of which were issued under § 2 of the Price Control Act, 50

U.S.C.A.Appendix, § 902." The court continued by saying that the Emergency Court of Appeals had said that "'* * * in the case of a regulation issued under Section 2 orders issued under its authority are themselves orders under Section 2 of the Act and as such their validity is reviewable by protest under Section 203 and by complaint in this court under Section 204.' Armour & Co. v. R.F.C., Em.App., 162 F.2d 918, 923." It added: "And even if meat were held to be an 'agricultural commodity,' it is doubtful if § 2(m) would support the present action, since it was an independent provision which had application in cases where the plaintiff felt aggrieved at administrative action taken under the terms of the act or under a valid regulation. It was not a grant of jurisdiction to determine the validity of a challenged regulation. Samett v. R. F. C., 10 Cir., 165 F.2d 605, certiorari denied 334 U.S. 812, 68 S.Ct. 1017, 92 L.Ed. 1743; Illinois Packing Co. v. R. F. C., 7 Cir., 156 F.2d 875."

Again, in Duncan Coffee Co. v. R. F. C., 178 F.2d 926, 928, the Emergency Court of Appeals commented: "In the instant case, no regulation was issued under Section 2 of the Emergency Price Control Act. However, authority for the payment of subsidies is found in Section 2(e) of that statute, and an order relative to the payment or nonpayment of a subsidy would, therefore, be an 'order issued under section 2,' of which this court has jurisdiction. In this case, the determination of the RFC with respect to complainant's claim for subsidy amounted to an order." The same court, where the situation was reversed and RFC was contending that the Emergency Court had no jurisdiction, in Merchants Packing Co. v. R. F. C., Em.App., 176 F.2d 908, 912, said: "We have hitherto held, in a series of cases, that the subsidy regulation was issued pursuant to § 2(e) of the Emergency Price Control Act of 1942, 56 Stat. 26, 50 U.S.C.A.Appendix, § 902(e), and that *a ruling or determination by RFC thereunder denying a subsidy claim in whole or in part is in effect a* 'regulation or order under section 2,' subject to protest under § 203(a) of the Act, 50 U.S.C.A.

Appendix, § 923(a), and to review in the Emergency Court of Appeals under § 204 (a), 50 U.S.C.A.Appendix, § 924(a). Belle City Packing Co. v. R. F. C., Em.App.1948, 169 F.2d 413, and cases cited page 414. Such review by us may involve interpretation of the terms of the subsidy regulation, for the regulation has the force of law binding on the subsidy-paying agency; and if RFC's determination or 'order' denying a subsidy claim is based upon an erroneous application of the regulation, such order may be set aside by us as 'not in accordance with law'. Likewise, if a determination or order denying a subsidy claim is based upon factual findings lacking in substantial evidentiary support, such order may be set aside by us as being, in the words of the statute, 'arbitrary or capricious'. Though the Price Control Act terminated on June 30, 1947, 60 Stat. 664, the jurisdiction of this court in such cases is preserved by Section 1(b) of the Act, 50 U.S.C.A.Appendix, § 901(b), since the protest and complaint are founded upon an asserted 'right' in complainant, with a corresponding 'liability' of the subsidy-paying agency, incurred under the subsidy regulation prior to such termination date."

We agree with these decisions that the announcement constituted a ruling by the body charged with administration of subsidies that it would not allow or pay subsidies upon slaughtered goods held in inventory on the date of expiration of price control. This was a ruling having the same effect as any other administrative order binding upon the parties until revoked or set aside. It follows inevitably, we think, that, inasmuch as plaintiff brought this suit to set aside and to have held invalid as unlawful and arbitrary an administrative order issued in pursuance of the Emergency Price Control Act and directives authorized thereby, plaintiff sought relief in the wrong forum and by the wrong procedure.

It follows, we think, that the District Court was, by act of Congress, deprived of any power to proceed in this matter and that the suit should have been dismissed for want of jurisdiction. The judgment is reversed with directions to dismiss the cause for want of jurisdiction.

MAJOR, Chief Judge, dissenting.

The opinion of Judge Sullivan who tried this case in the District Court is reported. Swift & Co. v. Reconstruction Finance Corp., D.C., 79 F.Supp. 546. In that opinion is an accurate statement of the facts and issues involved. In the main I agree with the reasoning by which he arrived at the conclusion that the court had jurisdiction under Section 2(m) of the Emergency Price Control Act and that plaintiff was entitled to prevail on the merits. Such being the case, no good purpose could be served by any extended discussion on my part.

The jurisdictional issue depends upon whether the subsidies were those "relating to the production or sale of agricultural commodities * * *" within the language of Section 2(m), as urged by the plaintiff, or whether they were subsidies on processed meat, as claimed by the defendant. In my judgment, they clearly fall within the former category, as found by Judge Sullivan. In fact, the record furnishes ample grounds for the belief that the position now taken by the defendant was an afterthought, designed to meet the exigencies of a law suit. At any rate, the defendant paid to the plaintiff more than $1,300,000 on the latter's subsidy claim, apparently before it became aware that the subsidy was on processed meat and, therefore, not recoverable on such meat as remained in plaintiff's storage at the expiration of price controls. To me, this is an astounding situation explainable only on the basis that the position which defendant now takes was conceived long after its liability to the plaintiff had by its own directives become definitely established.

Of course, I realize that the predicament in which defendant now finds itself is not decisive of the legal issues presented. However, its belated discovery is significant in that prior thereto it recognized what its directives plainly proclaimed and what the industry and everybody concerned therewith must have understood, that is, that

the subsidy payable to the slaughterers was for the benefit of livestock producers so as to stimulate production, and that such payments were required to be passed on to the producers.

I would affirm the judgment.