**BRINKER–JOHNSON CO. and Walter W. Johnson, Appellants,**

v.

**RECONSTRUCTION FINANCE CORPORATION, Appellee.**

No. 14889.

United States Court of Appeals
Ninth Circuit.

Aug. 14, 1956.

Walker Lowry, San Fransico, Cal., for appellant.

Crimins, Kent, Draper & Bradley, John L. Bradley, Martin Tabor Crimmins, Sam J. Whiting, Jr., San Francisco, Cal., for appellee.

Before ORR, LEMMON and CHAMBERS, Circuit Judges.

ORR, Circuit Judge:

■ Appellants are here seeking recovery of certain interest payments made to the Reconstruction Finance Corporation, hereafter R. F. C. We have concluded that appellants' proper forum is the Court of Claims.

Brinker-Johnson Co. was organized to operate certain Alaska gold mining property. To this end it sought, and, in 1941, together with appellant Walter W. Johnson, obtained a loan of some $250,-000 from appellee R. F. C. The latter turned the said money over to certain banks as trustees for the use of appellants. Withdrawals were made subject to the approval of an R. F. C. representative.

In return appellants gave R. F. C. twenty-five interest bearing notes for $10,000 each. The terms of the loan limited the use of the borrowed funds to the development and exploitation of the Alaska mine. Appellants agreed to diligently carry on the said project and that all receipts of the operation would be turned over to the trustee banks to be applied first against the indebtedness due R. F. C.

The property was equipped and was operated through the 1941 and 1942 mining seasons. On October 8, 1942 the War Production Board promulgated Limitation Order L–208, 7 F. R. 7992, which closed down all gold mining operations in the United States and its territories. The mining of gold was deemed by the said War Production Board as industrial activity incapable of contributing to the war effort and in competition with defense production for labor and materials.

An administrative appeal from the said order was taken by appellants but the limited relief thus obtained was of no practical value. The effect of L–208 was to close down appellants' mine. At this time most of the $250,000 had been invested in mining equipment which was by said order idled until October 31, 1945.

On July 1, 1945 L–208 was lifted. Early in 1946 appellants negotiated a second loan of $50,000 from R. F. C. for the purpose of financing renewed operations.

Appellants have paid the R. F. C. interest at contract rates for the shutdown period under protest. The controversy here relates solely to these payments and to the question of whether, as a matter of law, Limitation Order L–208 had the effect of releasing appellants' obligation to pay interest for the said shutdown period. The district court entertained the action and rendered judgment in favor of R. F. C.

■ Appellee has challenged our jurisdiction, claiming that the present action is in substance a suit against the United States which, it is argued, has not waived its sovereign immunity by consent to suit. The short answer to this contention is that § 603 of Title 15 U.S.C.A.[1] expressly provides that R. F. C. may "sue and be sued." This provision and the case of Keifer & Keifer v. R. F. C., 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, see also R. F. C. v. J. G. Menihan Corp., 1941, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595, clearly establish that R. F. C. may be sued.

Appellee cites Atlantic Meat Co. v. R. F. C., 1 Cir., 1948, 166 F.2d 51, and R. F. C. v. MacArthur Mining Co., Inc., 8 Cir., 1950, 184 F.2d 913, as holding to the contrary. These cases deal with peculiar fact situations which persuaded the courts that the actions were not

---

1. Reference is to 15 U.S.C.A. § 603 as amended in 67 Stat. 230 and 68 Stat. 320; see Title 15, U.S.C.A.1955 Cum.Supp.

against the R. F. C. but were in fact suits against the United States. The instant action is in the nature of assumpsit or an action for money had and received and is controlled by § 603 supra.

Appellants rest their argument on three alternative legal contentions. They first assert that Limitation Order L–208 effected a complete commercial frustration of the contract; secondly, that the issuance of L–208 constituted a breach by the United States, (deemed for this purpose the alter ego of R. F. C.,) of its implied covenant not to interfere with the performance of the contractual obligations; and finally, that the Second War Powers Act, 50 U.S.C.A.Appendix, § 1152(a) (7), providing that no person shall be held liable for "damages or penalties" as a result of compliance with governmental regulations, excused appellants from paying interest for the shutdown period.

These contentions are best viewed in the light of the history of Limitation Order L–208 and of the remedial legislation enacted by the Congress, Public Law 532, 82nd Congress, 66 Stat. 605,[2] as a consequence of that order. The Committee Reports accompanying P.L. 532,[3] disclose that the War Production Board selected the gold mining industry as one which would cause the least amount of harm in testing the feasibility of shutting down non-essential industries during the war period as a means of concentrating the full force of national energies on war production. The experiment proved the idea impractical and no other industries were so treated. The Congressional Committees accepted the view of the Court of Claims, expressed in Idaho Maryland Mines Corp.

v. United States, 1952, 122 Ct.Cl. 670, 104 F.Supp. 576, that the order was based on dubious authority and raised grave questions of due process of law. Summing up, the Committee found:

"It is clear, in the opinion of your committee, which opinion is supported by expert testimony and is uncontradicted by Government witnesses, that there was little or no basis for issuing L–208, and that it was not only an administrative error but that the War Production Board proceeded on dubious authority. The conclusion further has been reached that the order should have provided a mechanism for compensation and that as such was not provided, the Congress should so provide, even when realizing that much of the loss and damage is irreparable."

It thus appears that in enacting P.L. 532 the Congress fully appreciated the hardship caused by L–208. Congress elected to recompense any operator of a gold mine or gold placer operation for all losses caused by the order and provided a mechanism to that end.

The contentions advanced by appellants are reducible to the claim that an action by the United States, Order L–208, has prevented the performance of appellants' contractual obligation to R. F. C. or has destroyed the value to appellants of R. F. C.'s counter-performance.

It is clear that appellants' obligation consisted of their contractual duty to repay the principal of the said indebtedness and interest thereon. The government through Order L–208 prevented

---

2. P.L. 532 provides: "That the United States Court of Claims be, and hereby is, given jurisdiction to hear, determine, and render judgment, notwithstanding any statute of limitations, laches, or lapse of time, on the claim of any owner or operator of a gold mine or gold placer operation for losses incurred allegedly because of the closing or curtailment or prevention of operations of such mine or placer operation as a result of the restric-

tions imposed by War Production Board Limitation Order L–208 during the effective life thereof: *Provided,* That actions on such claims shall be brought within one year from the date this Act becomes effective."

Appellants' claim pursuant to P.L. 532 was timely filed in the Court of Claims.

3. 82nd Congress, 2nd Sess., S. Rep't. No. 1605; H. Rep't. No. 2220.

the mining operations upon which appellants depended to obtain funds with which to meet their obligations to R. F. C., however, the Government through P. L. 532 has provided a substitute source of funds upon which appellants may make claim. Performance of appellants' obligation has not been prevented.

But, argue appellants, the purpose of the contract was to enable them to develop the said Alaska mines, which purpose was completely if temporarily frustrated by the promulgation of Order L–208 and, as a practical matter, appellants, therefore, received no benefit during the shutdown period from the funds loaned them by R. F. C. This, they contend, relieved them of their obligation to pay interest.

We do not think it necessary to determine what merit appellants' argument would have had Congress not expressly assumed the burden of losses incurred because of L–208. Appellants have suffered a loss as a result of L–208 in that they have had to pay interest on their R. F. C. loan over a period during which they could receive no corresponding benefit from the use of the borrowed money. But Congress has recognized that just such a contingency might arise and it further recognized that equity and fair dealing demanded that loss occasioned by Order L–208 should be compensated for by the United States and named the forum in which a claimed loss should be adjudicated, viz. in the Court of Claims. In the event a party has a just claim it must be assumed that the Court of Claims would make a fair reimbursement, in which event no damage would result because of Order L–208. The borrower would be made whole and the lending company receive that to which it would be entitled under its contract. As pointing up the requirement of resort to the Court of Claims we cite as an example the situation in which a private lending agency would be had it loaned money and a borrower been hampered in its operation by Order L–208. If a judgment had been obtained for return of interest paid for use of money during the time Order L–208 was in effect, the private lending agency could not recoup from the United States, notwithstanding the United States had pledged itself to make good the loss.[4] In the event of such suit against a private lending agency with such a contingency in prospect we do not think the courts would hesitate to relegate the claimant to his remedy in the Court of Claims.

We see no reason why an independent agency of the Government should be treated differently.

The cause is remanded to the district court with instructions to dismiss.

CHAMBERS, Circuit Judge, being of the opinion that the district court did have jurisdiction, dissents. He would consider the appeal upon its merits.

---

4. The remedy provided by P.L. 532 is limited to claims by "owner[s] or operator[s] of a gold mine or gold placer operation."